1

The Honorable Franklin D. Burgess

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10   DANIEL MARTINEZ,

Case No. C08-5503 FDB

          Plaintiff,

11

          vs.

**MOTION TO DISMISS**

12

13   HELEN MARTINEZ and
THE SUQUAMISH TRIBE,

NOTE ON MOTION CALENDAR:
December 12, 2008

14

15          Defendants.

16          Defendant Helen Martinez moves for an order dismissing this action without prejudice.

17   This motion is made pursuant to FRCP 12(b)(6) and is supported by Exhibits A through I

18   attached to this Motion.

19   **I. Introduction and Relief Requested**

20          Helen Martinez is an Alaska Native and member of the Native Village of Savoonga.  Her

21   husband, Daniel Martinez, is non-Indian.  Mr. and Ms. Martinez have resided on the Suquamish

22   Tribe's Port Madison Reservation for approximately ten years.  Daniel and Helen Martinez have

23   each initiated civil actions in the Suquamish Tribal Court against each other.

24

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

1
2
3
4
5
6

Daniel Martinez has now brought this action in federal district court, challenging the jurisdiction of the tribal court to continue hearing their domestic relations actions.  When, as here, a litigant has failed to exhaust his opportunity to raise jurisdictional claims in tribal court prior to asking a federal court to address the tribe's jurisdiction, the federal courts have routinely dismissed the action and required the party challenging the tribe's jurisdiction to raise that issue before the tribal court.

7
8
9
10

The tribal court exhaustion doctrine applies to the case before this court.  This court should require Daniel Martinez to allow the tribal court an opportunity to first determine its jurisdiction in the matter.  Defendant Helen Martinez therefore seeks an order dismissing Daniel Martinez's complaint for declaratory and injunctive relief.

11 **II. Statement of Facts**

12
13
14
15
16
17
18

Daniel and Helen Martinez married on December 31, 1999 in Savoonga, Alaska. They have two children: A.R.M. and D.M.M.  Helen Martinez is an Alaska Native; she and her children are enrolled members of the Native Village of Savoonga.   The parties and the children have lived on the Suquamish Reservation since 1998.  The family primarily resided in a home located on fee land; however, in approximately 2006-2007, Helen Martinez and the children lived in Suquamish Tribal Transitional Housing owned by the Tribe and located on the reservation.  *See* Ex. A, Declaration of Marilyn Kay at page 4, line 19.

19
20
21
22
23

On July 16, 2007, Daniel Martinez initiated a petition for a domestic violence protection order in the Suquamish Tribal Court.  Ex. B, Petition for Order for Protection.  The tribal court determined that it had jurisdiction over the parties and the subject matter and entered a temporary order restraining Helen Martinez from her husband and their children.  Ex. C, Temporary Order and VAWA Certification.  The protection order was dismissed on August 9, 2007 by agreement

24

MOTION TO DISMISS
CASE NO. C08-5503 FDB
PAGE 2 OF 16

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

1   of the parties in favor of addressing the issues in the parties' dissolution proceeding pending

2   before the tribal court.  Ex. D, Order on Dismissal.  The dissolution was also subsequently

3   dismissed by agreement of the parties.

4          On February 28, 2008, Helen Martinez petitioned the Suquamish Tribal Court for a

5   domestic violence protection order against her husband.  Dkt. 8-2.  The court granted an ex parte

6   temporary order and set the case for hearing on March 27, 2008.  Daniel Martinez responded to

7   the petition and attended the hearing.  Ex. E, Response by Daniel Martinez; Ex. A, Declaration

8   of Marilyn Kay at page 2, lines 15-20.  The court issued a final order of protection which Daniel

9   Martinez signed in court.  Ex. F, Order for Protection at page 4; Ex. A, Declaration of Marilyn

10  Kay at page 2, lines 20-22.   In a second matter, Helen Martinez filed for dissolution in

11  Suquamish Tribal Court on March 4, 2008 and moved for temporary orders.  Daniel Martinez

12  responded, filing a proposed parenting plan and a financial declaration.  Ex. G., Daniel

13  Martinez's Parenting Plan and Financial Declaration. The court entered a temporary order on

14  April 29, 2008.

15         On May 14, 2008, Daniel Martinez's counsel filed a notice of appearance in both matters,

16  asserting lack of subject matter and personal jurisdiction.  No further pleadings were filed by

17  Daniel Martinez regarding the issue of subject matter or personal jurisdiction.  No motions were

18  filed to revise, modify or vacate the Order for Protection filed with the Suquamish Tribal Court,

19  nor was the final Order for Protection appealed to the Suquamish Tribal Court of Appeals.  In the

20  dissolution, Daniel Martinez has not moved the court for an order regarding personal or subject

21  matter jurisdiction.  Thus, the Suquamish Tribal Court has not heard argument or made any

22  determinations as to its jurisdiction in either matter.  The dissolution trial is scheduled for

23  February 27, 2009.

24

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

1   On April 2, 2008, Daniel Martinez was charged in Kitsap County District Court for

2   violation of the domestic violence protection order.  The court issued Domestic Violence No

3   Contact Orders on July 28, 2008, preventing Daniel Martinez from having any contact with

4   Helen, A.R.M. or D.M.M. until July 28, 2010.  Ex. H, Domestic Violence No Contact Orders.

5   The children remain in their mother's care.

## III. Argument and Authority

7   The plaintiff filed this action against the Suquamish Tribe and his wife, seeking a

8   declaratory judgment that the Suquamish Tribal Court lacks jurisdiction and injunctive relief

9   prohibiting the tribal court and Helen Martinez from litigating the dissolution of the Martinezes'

10  marriage in that court or enforcing the domestic violence protection order entered by the

11  Suquamish Tribal Court on March 27, 2008.  The doctrine of tribal court exhaustion requires that

12  the tribal court have the first opportunity to evaluate the factual and legal bases for any challenge

13  to its own jurisdiction.  Due to the plaintiff's failure to litigate the issue, no final determination of

14  jurisdiction has ever been made by the Suquamish Tribal Court.  While there are limited

15  exceptions to the exhaustion requirement, none apply here.  As a result, this action is not yet ripe

16  for district court review and should be dismissed.

### A. Plaintiff Has a Duty to Exhaust Tribal Court Remedies and Has Failed to Do So.

18  Under the tribal court exhaustion doctrine, the tribal court must have the opportunity in

19  the first instance to hear any challenge to its civil subject-matter jurisdiction over non-Indians,

20  examine the extent of tribal sovereignty, relevant statutes, treaties and administrative or judicial

21  decisions. *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians,* 471 U.S. 845, 855-856, 105

22  S.Ct. 2447 (1985).   Relief may not be sought in federal court until review of a pending matter in

23  a tribal court is complete.  *Atwood v. Fort Peck Tribal Court Assiniboine and Sioux Tribes*, 513

24

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

1   F.3d 943, 948 (9th Cir.2008); *Boozer v. Wilder*, 381 F.3d 931, 935 (9th Cir.2004); *Eaton v. Mail*,

2   2008 WL 4534367 at 5 (W.D.Wash. Oct 07, 2008) (No. C08-5538FDB).   The tribal court's

3   opportunity to evaluate any challenges to its jurisdiction requires, at minimum, completion of an

4   appellate review in tribal court.  *Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 16-17, 107 S.Ct. 971

5   (1987); *Boozer v. Wilder*, 381 F.3d 931, 935 (9th Cir.2004).

6        Plaintiff has failed to exhaust his tribal court remedies.  Daniel Martinez, through

7   counsel, asserted lack of jurisdiction through his notice of appearance in both the domestic

8   violence and dissolution proceedings; however, he has either failed or refused to actually bring

9   the issue before the court to be determined.  In failing to litigate the jurisdiction issue before the

10  tribal forum in either matter, the plaintiff prematurely seeks review before the District Court.

11  This is contrary to the requirements established by the doctrine of tribal court exhaustion.  A

12  district court has no discretion to relieve a litigant from the duty to exhaust tribal remedies prior

13  to proceeding in federal court.  *Marceau v. Blackfeet Housing Authority*, 540 F.3d 916, 920-921

14  (9th Cir.2008), quoting *Allstate Indem. Co. v. Stump*, 191 F.3d 1071, 1073 (9th Cir.1999).

15       Further, plaintiff has not appealed the Order for Protection to the Suquamish Tribal Court

16  of Appeals. Ex. A, Declaration of Marilyn Kay, at page 3, line 1.  The Suquamish Tribal Court of

17  Appeals is established pursuant to Section 3.1.3 of the Suquamish Tribal Code which provides:

18       The Suquamish Tribal Court of Appeals shall consist of appeals judges appointed by the
         Suquamish Tribal Council.  A panel of the court of appeals to hear any appeal shall
19       consist of a chief judge and two (2) associate judges who shall decide appeals on the
         record by a majority vote of the three-member appeals panel.

20       The plaintiff's failure to appeal the final order of protection to the Suquamish Tribal

21  Court of Appeals does not create an exception to the exhaustion requirement.  *See Stock West*

22  *Corp. v. Lujan*, 982 F.2d 1389, 1394 (9th Cir.1993). ("In particular, we reject the idea that Stock

23

24

MOTION TO DISMISS
CASE NO. C08-5503 FDB
PAGE 5 OF 16

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

1    West's own failure to bring a timely administrative appeal renders such an appeal 'futile' for

2    purposes of an exception to the exhaustion requirement.")

3           **B.  Exceptions to the Exhaustion Requirement are Inapplicable Here**.

4           The Supreme Court has established narrow exceptions to the tribal court exhaustion

5    requirement.  Exhaustion is not compulsory where (1) an assertion of tribal jurisdiction is

6    motivated by a desire to harass or is conducted in bad faith; (2) the action is patently violative of

7    express jurisdictional prohibitions; (3) exhaustion would be futile because of the lack of adequate

8    opportunity to challenge the court's jurisdiction; or (4) it is plain that no federal grant provides

9    for tribal governance of nonmembers' conduct on land covered by *Montana's* main rule, so the

10   exhaustion requirement would serve no purpose other than delay.  *Nevada v. Hicks*, 533 U.S.

11   353, 369, 121 S.Ct. 2304, (2001).  For the reasons discussed below, none of the exceptions to the

12   tribal court exhaustion doctrine apply here.

13          **1.  Defendant has not filed tribal court actions in bad faith.**

14          Exhaustion is not required if an assertion of tribal jurisdiction is made in bad faith or

15   motivated by harassment, *Nat'l Farmers Union*, 471 U.S. at 856, n. 21, 105 S.Ct. 2447; *Atwood*,

16   513 F.3d at 948.  The plaintiff has not alleged that the defendant has availed herself of the tribal

17   court in bad faith and there is no evidence to support such an assertion.  On the contrary, this is a

18   judicial forum in which both parties have initiated, defended and settled claims, Ex. A,

19   Declaration of Marilyn Kay, and it is a judicial forum conveniently situated near both parties.

20   The defendant's use of this forum was reasonable.

21          **2.  There is no express federal prohibition of tribal court jurisdiction over**
            **non-Indians in domestic relations cases.**

22
23          A litigant need not exhaust tribal court remedies when the action is "patently violative of

24   express jurisdictional prohibitions," *Nat'l Farmers Union*, 471 U.S. at 856 n. 21, 105 S.Ct. 2447;

MOTION TO DISMISS
CASE NO. C08-5503 FDB
PAGE 6 of 16

**Northwest Justice Project**
**401 Second Avenue S, Suite 407**
**Seattle, Washington 98104**
**Phone: (206) 464-1519  Fax: (206) 624-7501**

1    *Iowa Mut*., 480 U.S. at 19 n. 12, 107 S.Ct. 971, *Strate v. A-1 Contractors,* 520 U.S. 438, 459-

2    460, and. n. 14*,* 117 S.Ct. 1404 (1997).  Again, this exception does not apply here.

3           In *Strate v. A-1 Contractors,* 520 U.S. 438, *Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9,

4    and *Nat'l Farmers*, 471 U.S. 845, the Supreme Court expressly declined to extend the rule that

5    tribal courts do not have criminal jurisdiction over non-Indians for crimes occurring on an Indian

6    reservation, *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 98 S.Ct. 1011 (1978), to tribal

7    courts' civil jurisdiction.  The Court explained that, "[i]f we were to apply the Oliphant rule here,

8    it is plain that any exhaustion requirement would be completely foreclosed because federal

9    courts would always be the only forums for civil actions against non-Indians." *Nat'l Farmers*,

10   471 U.S. at 854, 105 S.Ct. 2447.  The Court's refusal to adopt the *Oliphant* rule in the above

11   cases necessarily implies that tribal courts retain civil jurisdiction to decide some cases involving

12   non-Indians.  *Id*. at 855, 105 S.Ct. 2447 ("the answer to the question whether a tribal court has

13   the power to exercise civil subject-matter jurisdiction over non-Indians .... is not automatically

14   foreclosed.") *See also Strate*, 520 U.S. at 449, 117 S.Ct. 1404 (stating that "tribal courts have

15   more extensive jurisdiction in civil cases than in criminal proceedings").

16          As a general rule, the authority of tribal courts does not extend to the activities of

17   nonmembers of the tribe on non-Indian land.  *Montana v. United States*, 450 U.S. 544, 101 S.Ct.

18   1245, 1258-1259 (1981).  The *Montana* principal is subject to two exceptions.  First, the tribe

19   may appropriately exercise authority over nonmembers who enter consensual relationships with

20   a tribe or its members; second, a tribe may exercise civil authority over the conduct of non-

21   Indians on fee lands within the reservation when that conduct threatens or impacts the tribe's

22   political integrity, economic security, or health or welfare of the community.  *Id.* at 565-566.

23

24

**Northwest Justice Project**
**401 Second Avenue S, Suite 407**
**Seattle, Washington 98104**
**Phone: (206) 464-1519  Fax: (206) 624-7501**

1        The dissolution and protection order matters meet the first exception under the *Montana*

2   rule.  Daniel Martinez has created a consensual relationship with the Tribe by his recurring

3   participation in the Suquamish Tribal Court system.   The Ninth Circuit has held that by

4   choosing to appear in tribal court, a plaintiff "could and did consent to the civil jurisdiction of the

5   Tribes' courts."  *Smith v. Salish Kootenai Coll.*, 434 F.3d 1127, 1136 (9th Cir. 2006) (en banc).

6   This constitutes a consensual relationship within the meaning of *Montana*.  *Id.* at 1140; *see also*

7   *Atwood*, 513 F.3d at 948, (finding that because non-Indian plaintiff availed himself of a tribal

8   forum voluntarily in a prior suit, this constituted at least a "colorable" basis for jurisdiction, even

9   though the tribal court case at issue was not initiated by plaintiff.)

10        Daniel Martinez has appeared and responded to claims, without objection to the court's

11   jurisdiction, in numerous Suquamish Tribal Court actions dating from at least 2000.  Ex. A,

12   Declaration of Marilyn Kay.  Most importantly, the plaintiff availed himself of the tribal court

13   forum voluntarily when he filed a petition for a domestic violence protection order against the

14   defendant on July 16, 2007.  Ex. B, Daniel Martinez's Petition for Order for Protection.  In

15   petitioning the Suquamish Tribal Court for relief, Daniel Martinez asserted the court's

16   jurisdiction over the subject matter and the parties.  *Id.*  He utilized the tribal court to his

17   advantage: as he requested, the court found that jurisdiction was proper and entered a temporary

18   order restraining Helen Martinez from her husband, the children and the home and granting

19   temporary custody to Daniel Martinez.  Ex. C, Temporary Order and VAWA Certification.  The

20   temporary order of protection was ultimately dismissed upon agreement of the parties and not

21   upon any jurisdictional grounds. Ex. D, Order of Dismissal.

22        The issue of the Suquamish Tribal Court's personal and subject matter jurisdiction having

23   been adjudicated, the plaintiff may not reopen that question now; principles of res judicata apply

24

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

1   to jurisdictional determinations both with respect to subject matter jurisdiction and with respect

2   to personal jurisdiction. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,

3   456 U.S. 694, 702 n. 9, 102 S.Ct. 2099 (1982).

4       By invoking the jurisdiction of the tribal court, the plaintiff established a consensual

5   relationship within the meaning of *Montana*.  Therefore, Suquamish Tribal Court jurisdiction is

6   proper.

7       The conduct at issue in the tribal court proceedings also falls squarely within the second

8   *Montana* exception.  At the heart of the Martinezes' domestic relations cases is a history of

9   domestic violence and the tribal court's efforts to prevent harmful conduct against the parties and

10  their children.  Furthermore, the impacts of domestic violence extend beyond the individual

11  victims and affect the health, safety and welfare of the Suquamish community.  Domestic

12  violence has been shown to burden judicial resources, impose economic costs on communities in

13  the form of increased health care expenditures and lost productivity from employee absenteeism,

14  *see e.g., Developments in the Law: Legal Responses to Domestic Violence*, 106 Harv.L.Rev.

15  1498, 1501-1502 (1993); Sarah Deer, *Toward an Indigenous Jurisprudence of Rape*, 14 Kan.

16  J.L. & Pub. Pol'y 121, 124 (2004), pose a threat to Indian culture, *Id*. at 121, and, when

17  witnessed by children, leads to increased rates of juvenile delinquency.  Bonnie E. Rabin,

18  *Violence Against Mothers Equals Violence Against Children: Understanding the Connections*,

19  58 Alb. L. Rev. 1109, 1112-13 (1995).

20      The Suquamish Tribe has a clear interest in reducing and preventing domestic violence in

21  the tribal community.  Therefore, both matters meet the criteria of *Montana*'s second exception.

22      In addition, there is consistent federal court recognition that such jurisdiction is proper.

23  The Ninth Circuit has specifically upheld tribal courts' personal jurisdiction over non-Indians

24

1   and subject matter jurisdiction over domestic relations issues in cases arising on Indian

2   reservations.  *See e.g.*, *Sanders v. Robinson*, 864 F.2d 630, (9th Cir.1988), *cert. denied*, 490 U.S.

3   1110, 109 S.Ct. 3165 (1989) (holding that the tribal court could "at least exercise concurrent

4   jurisdiction" over a dissolution action between an Indian plaintiff and a non-Indian defendant

5   residing on the reservation.)

6          *Atwood v. Fort Peck Tribal Court Assiniboine and Sioux Tribes*, 513 F.3d 943 (9th

7   Cir.2008), involved similar facts to those before this court.  In *Atwood*, a non-Indian father filed

8   suit in federal district court after his daughter's maternal aunt petitioned the tribal court for

9   custody of the child.  The Ninth Circuit affirmed dismissal based on the plaintiff's failure to

10  exhaust tribal court remedies. The Court found that jurisdiction was not merely colorable, but

11  "almost certainly" proper, regardless of the fact that the plaintiff was non-Indian and the

12  defendant's Indian status was unclear.  *Atwood*, 513 F.3d at 946 and 948 fn.1.

13         Similarly, in *Boozer v. Wilder*, 381 F.3d 931 (9th Cir.2004), the Ninth Circuit affirmed

14  dismissal of a case involving a non-Indian father challenging the Colville Tribal Court's

15  jurisdiction over a nonparental custody proceeding for his Indian daughter.  In its analysis, the

16  Court found that since the child possibly resided on the Colville Reservation, the Indian Child

17  Welfare Act may have applied and therefore the tribal court's jurisdiction was colorable.  *Boozer

18  v. Wilder*, 381 F.3d 931 at 936.  Consequently, the plaintiff was required to exhaust tribal court

19  remedies before filing a federal claim.

20          The tribal court would not have a colorable claim to jurisdiction if the matters were

21  outside the purview of the court's jurisdiction as articulated under tribal law, but the tribal court

22  is acting squarely within its retained inherent sovereign authority.  The Suquamish Tribal

23  Constitution and Suquamish Tribal code invest the tribal court with authority to adjudicate a

24

1   range of domestic relations issues, including dissolutions, custody determinations and domestic

2   violence protection orders. The Suquamish code expressly states that the court is vested with the

3   fullest jurisdiction permissible under applicable law.  Suquamish Constitution, Article III (i).

4   The Tribe's jurisdiction has not been limited by treaty or statute, and the Tribe has not given up

5   its authority to exercise jurisdiction over actions such as the Martinezes' dissolution and

6   domestic violence protection order.

7         The Tribal Code provides that the Suquamish Tribal Court's subject matter jurisdiction

8   "shall extend to all cases and controversies within the territorial jurisdiction of the Suquamish

9   Tribe, including but not limited to... All civil actions involving any Indian person, tribe,

10   organization, or property".  Suquamish Tribal Code § 3.2.1.   The court's jurisdiction is not

11   limited to cases arising on tribal or individually owned trust land; rather, the scope of the tribal

12   court's jurisdiction encompasses "All land and property within the exterior boundaries of the

13   Port Madison Indian Reservation."  Suquamish Tribal Code § 3.2.3.

14         The tribal code's grant of subject matter jurisdiction is specifically extended to domestic

15   relations proceedings.  The Suquamish Tribal Courts have jurisdiction "to hear and determine all

16   family matters including but not limited to divorce, separate maintenance, annulment,

17   determination of paternity and support, custody of minor children, and division of all personal

18   and nontrust real property."  Suquamish Tribal Code § 9.1.1 (b).

19         In addition, the Suquamish Tribal Court properly found that it has personal jurisdiction

20   over the parties.  Section 3.2.2 of the code vests the tribal court with personal jurisdiction "over

21   all persons who are domiciled or resident within, or served with process within, or conduct

22   continuous and substantial business within the territorial jurisdiction of the courts and also over

23   all persons who consent to the jurisdiction of the tribal courts."  Suquamish Tribal Code § 3.2.2

24

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

(1), or for "[a]ny other act or series of acts that establish minimal contacts with the territorial

jurisdiction of the court, or that are otherwise sufficient to confer personal jurisdiction consistent

with due process." Suquamish Tribal Code § 3.2.2 (3) (c).  Furthermore, the tribal courts have

personal jurisdiction over any person "for any actions arising from the commission by that

person, personally or through an agent, of any of the following acts within the territorial

jurisdiction of the court:

> (a) The transaction of any business;
> (b) ***The commission of a tortious act***;
> (c) ***Ownership, use, or possession of any real or personal property situated within said territory***;
> (d) ***Conceiving a child***;
> (e) ***Living in a marital relationship, so long as either the petitioning party or the respondant is domiciled within the territorial jurisdiction of the court at the time the action is commenced***; or
> (f) Any violation of a tax law or licensing or other civil regulatory law, of the tribe; or
> (g) ***Any crime***."

Suquamish Tribal Code § 3.2.2 (2) (emphasis added)

Daniel Martinez conferred personal jurisdiction upon the Suquamish Tribal Court by

engaging in a number of actions, including, but not limited to, the commission of a tortuous act,

Dkt. No. 8-2, Petition for Domestic Violence Protection Order; use or possession of real

property, Dkt. No. 3, Plaintiff's Complaint at page 3; conceiving a child, Ex. I, Petition for

Dissolution at page 2; and living in a marital relationship while domiciled on the Port Madison

Reservation, Dkt. No. 3, Plaintiff's Complaint, at page 3.  In addition, he is domiciled within the

boundaries of the Port Madison Reservation, *Id*. at page 1, and has consented to the tribal court's

jurisdiction by his participation in civil proceedings.  *See e.g*., Ex. B, Daniel Martinez's Petition

for Order for Protection; Ex. E, Daniel Martinez's Response to Petition for Order for Protection;

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

Ex. G, Daniel Martinez's Parenting Plan and Financial Declaration; Ex. A, Declaration of

Marilyn Kay at page 2, line 18; page 4, line 9; page 5, line 3.

There is no express federal prohibition to the Suquamish Tribal Court adjudicating

domestic violence or domestic relations matters involving a non-Indian.  The Suquamish Tribal

Court has exercised its jurisdiction in a manner that is consistent with its own laws and

applicable federal statutory and case law.  The second exception to the requirement for tribal

court exhaustion does not apply to this case.

### 3.  Plaintiff has not demonstrated a lack of opportunity to challenge jurisdiction.

A third exception to exhaustion may be asserted when it would be futile because of the

lack of adequate opportunity to challenge the court's jurisdiction.  *Nat'l Farmers*, 471 U.S., at

856 n. 21, 105 S.Ct. at 2454 n. 21.  Clearly, the plaintiff cannot demonstrate that he has not had

an opportunity to bring this issue before the tribal court.  As described above in section III. A of

this motion, the plaintiff has either failed or refused to bring the issue of jurisdiction before the

tribal court for hearing.  As such, he cannot reasonably claim that he has not had an adequate

opportunity to challenge jurisdiction.

### 4.  There is a specific federal grant of authority to the tribal court to adjudicate the type of conduct alleged against Daniel Martinez.

Exhaustion is not required when it is "plain" that the tribal court lacks jurisdiction over

the dispute under *Montana*'s main rule.  *Strate v. A-1 Contractors*, 520 U.S. 438, 459 n. 14, 117

S.Ct. 1404.  This fourth exception to the tribal exhaustion requirement, which was articulated

first in *Strate v. A-1 Contractors,* and reiterated in *Hicks v. Nevada*, relieves a federal court

plaintiff of the necessity to raise jurisdictional challenges in tribal court when it is plain that the

conduct of that litigant is not within the scope of retained tribal sovereign authority as described

MOTION TO DISMISS
CASE NO. C08-5503 FDB
PAGE 13 OF 16

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

1   in *Montana,* and where Congress has not granted authority to the tribes to adjudicate such

2   conduct.  As argued above, Daniel Martinez's conduct is within the scope of the Suquamish

3   Tribe's retained sovereign authority.  However, even if it were not, Congress, with the passage of

4   the Violence Against Women Act, has specifically authorized the Suquamish Tribe to pass laws

5   concerning domestic violence and to adjudicate violations of such laws.

6          Under the Violence Against Women Act (VAWA), a tribal court protection order is

7   entitled to full faith and credit in state courts provided the tribal court has jurisdiction over the

8   parties and matter *under the law of that tribe*, and reasonable notice and opportunity to be heard

9   is given to the person against whom the order is sought sufficient to protect that person's right to

10  due process. 18 U.S.C. § 2265.  The domestic violence protection order against Daniel Martinez

11  was entered in accordance with VAWA's requirements.  *Id.*;  Suquamish Tribal Code § 7.28.2

12  ("Any person may petition the tribal court for an order for protection by filing a petition alleging

13  he or she has been the victim of domestic violence committed by the respondent.")  Daniel

14  Martinez attended the hearing and presented a response to the petition without objecting to the

15  court's jurisdiction.  Ex. F; Order for Protection; Ex. A, Declaration of Marilyn Kay at pages 2-3;

16  Ex. E, Daniel Martinez's Response to Petition for Order for Protection.  The Suquamish Tribal

17  Court's jurisdiction over the parties' domestic violence protection order is consistent with both

18  tribal law and the federal VAWA.

19         Both parties have availed themselves of this specific federal grant of authority.   The

20  Suquamish Tribal Court has granted domestic violence protection orders for Helen Martinez and

21  against Daniel Martinez and for Daniel Martinez against Helen Martinez.  Ex. C, Temporary

22  Order for Protection and VAWA Certification; Ex. F, Order for Protection.  In each action, the

23

24

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

1   tribal court properly determined that it had jurisdiction over the subject matter and the parties

2   under the tribal code.

3        Under the doctrine of tribal court exhaustion, federal courts are obliged to dismiss a claim

4   as long as there is a "colorable question" whether a tribal court has subject matter jurisdiction.

5   *Smith v. Salish Kootenai Coll.*, 434 F.3d 1127 at 1131 fn. 1.   The Ninth Circuit has likened an

6   examination of whether tribal court jurisdiction is colorable to whether it is "plausible."   *Atwood*,

7   513 F.3d at 948; *Stock West Corp. v. Taylor*, 964 F.2d 912, 919 (9th Cir. 1992) (en banc);

8   *Allstate Indem. Co. v. Stump*, 191 F.3d 1071, 1075-76 (9th Cir.1999).  The grant of authority to

9   the Suquamish Tribe to address domestic violence within the boundaries of its reservation more

10   than satisfies the "colorable question" standard.

11        Likewise, tribal court jurisdiction over the Martinezes' dissolution proceeding is

12   undoubtedly colorable.   As discussed above, domestic relations proceedings are within the scope

13   of the Suquamish Tribe's retained sovereign authority and Daniel Martinez has consented to the

14   tribal court's jurisdiction.   Therefore, this action must be dismissed and Daniel Martinez must

15   raise his jurisdictional challenge before the Suquamish Tribal Court.

16   **VI. Conclusion**

17        The plaintiff has failed to exhaust his tribal court remedies and the matters do not meet

18   the requirements of any exception.   Based on the foregoing, the defendant, Helen Martinez,

19   respectfully requests that the Court dismiss Daniel Martinez's complaint for declaratory and

20   injunctive relief.

21        RESPECTFULLY SUBMITTED this 20th day of November, 2008.

22

23

24

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

**NORTHWEST JUSTICE PROJECT**

_____s/Jennifer Yogi_____
Jennifer Yogi, WSBA No. 31928
401 2nd Avenue South, Suite 407
Seattle, WA 98104
Telephone: (206) 464-1519
Fax: (206) 464-1533
E-mail: jennifery@nwjustice.org

## **CERTIFICATE OF SERVICE**

I, Jennifer Yogi, certify under penalty of perjury under the laws of the State of Washington that on the 20th day of November, 2008, I caused a copy of a proposed order, defendant's exhibits, and this Motion, to be delivered via electronic mailing in .pdf format with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attention of the following:

Steven Olsen
Attorney for Plaintiff
Olsen and McFadden, Inc. P.S.
216 Ericksen Avenue
Bainbridge Island, WA 98110

James Bellis
Office of Tribal Attorneys
Suquamish Tribe
P.O. Box 498
Suquamish, WA  98392-0498

Signed at Seattle, Washington, this 20th day of November, 2008.

NORTHWEST JUSTICE PROJECT

_____/s/ Jennifer Yogi_____
Jennifer Yogi, WSBA #31928
Attorney for Defendant Helen Pungowiyi Martinez

MOTION TO DISMISS
CASE NO. C08-5503 FDB
PAGE 16 OF 16

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501