**HON. FRANKLIN D. BURGESS**

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF WASHINGTON

## AT TACOMA

DANIEL MARTINEZ,

    Plaintiff,

    vs.

HELEN MARTINEZ, and

THE SUQUAMISH TRIBE,

    Defendants

Case No.: C08-5503 FDB

**PLAINTIFF'S BRIEF OPPOSING MOTION TO DISMISS**

## I.

## INTRODUCTION AND RELIEF REQUESTED

Plaintiff, DANIEL MARTINEZ, requests the Court Deny Defendants' Motions to Dismiss the Complaint for Declaratory and Injunctive Relief.

## II

Plaintiff's Brief Opposing Motion to Dismiss

- 1

OLSEN & McFADDEN, INC. P.S.
216 Ericksen Ave.
Bainbridge Island, WA 98110
(206)780-0240
(206)780-0318      fax
steve@olsenmcfadden.com

# STATEMENT OF FACTS

Except as noted below, Plaintiff does not dispute the facts asserted by defendants in their Motions to Dismiss:

Neither Mr. nor Ms. Martinez are members of the Suquamish Tribe; nor are their children. Ms. Martinez is a Native American member of the Savoonga Tribe in Alaska. Mr. Martinez is not Indian.

At all times material hereto, the parties lived on the Port Madison (Suquamish) Indian Reservation.

On February 28, 2008, Ms. Martinez filed a Petition for Domestic Violence Protection Order in Suquamish Tribal Court (Plaintiff's Exhibit E); and obtained an Ex Parte Protection Order. Mr. Martinez appeared at the hearing on March 28, 2008. The Tribal Court granted a 5 year Protection Order; prohibiting Mr. Martinez from contacting his wife or children.  Mr. Martinez did not appeal.[1]

---

[1] It is not clear if Mr. Martinez ever received the DV Petition. The Court Clerk's Declaration states that Mr. Martinez was served with the Temporary Order (Declaration of Marilyn Kay, paragraph 5). The Declaration of Service states that only the Temporary

Plaintiff's Brief Opposing Motion to Dismiss

- 2

OLSEN & McFADDEN, INC. P.S.
216 Ericksen Ave.
Bainbridge Island, WA 98110
(206)780-0240
(206)780-0318      fax
steve@olsenmcfadden.com

1   On March 4, 2008, Ms. Martinez filed a Petition for Dissolution of

2   Marriage in Suquamish Tribal Court; to which Mr. Martinez also responded.

3   On 4/28/08, the Tribal Court entered a Temporary Order regarding

4
    payment of bills. There have been no other hearings in the Dissolution.  A
5
6   trial date of October 6, 2008 was continued, on Ms. Martinez' motion. Trial

7   is currently set for February 27, 2009.

8   It is undisputed that Mr. Martinez filed a Petition for Domestic

9
    Violence Protection Order against Ms. Martinez, in Suquamish Tribal Court
10
11  in July, 2007. After obtaining an Ex Parte Temporary Protection Order, the

12  Petition was dismissed less than a month later, before a hearing on the

13  Petition was held.[2]

14

15

16

17

18  Order was served. Plaintiff's Exhibit F In addition, Ms. Kay's Declaration does not claim

19  that Mr. Martinez was ever served with the Petition.

20  [2] The Court Clerk's Declaration erroneously states that the Order of Dismissal was

21  entered on 8/16/07. Declaration of Marilyn Kay, paragraph 21. However, Defendants'

22  Exhibit D shows the Order of Dismissal was entered on 8/9/07 – the date set for the DV

23  hearing. Defendants' Exhibit C

24  Plaintiff's Brief Opposing Motion to Dismiss

25  - 3

OLSEN & McFADDEN, INC. P.S.
216 Ericksen Ave.
Bainbridge Island, WA 98110
(206)780-0240
(206)780-0318        fax
steve@olsenmcfadden.com

It is also undisputed that Ms. Martinez filed a Petition for Dissolution in 2007 in Suquamish Tribal Court.[3] Nor is it disputed that Ms. Martinez dismissed that action.[4]

Additional Facts:

Though Mr. Martinez was arrested on February 27, 2008, based on Ms. Martinez' allegation of Domestic Violence, he was released the next day; and was never charged. Declaration of Daniel Martinez, par. 10.

Though Mr. Martinez was charged in Kitsap County District Court with violating the March 27, 2008 Protection Order on April 2, 2008, the District Court initially declined to find Probable Cause for that charge. Plaintiff's Motion to Dismiss that charge, based on the Suquamish Tribe's lack of subject matter jurisdiction,  is set to be heard December 10, 2008. Declaration of Daniel Martinez, par. 14, and Plaintiff's Exhibit C

---

[3] Once again, there is no evidence (even in the Court Clerk's Declaration) that Mr. Martinez was ever served with a Summons and Petition in that action.

[4] It is disputed that Mr. Martinez appeared or responded to the first Dissolution. The order of Dismissal was presented only by Ms. Martinez. Plaintiff's Exhibit G

Plaintiff's Brief Opposing Motion to Dismiss

- 4

OLSEN & McFADDEN, INC. P.S.
216 Ericksen Ave.
Bainbridge Island, WA 98110
(206)780-0240
(206)780-0318          fax
steve@olsenmcfadden.com

1
2
3
4
5
6
7

Plaintiff's counsel requested, in writing, a copy of the record of the Domestic Violence case, in order to determine whether grounds existed to bring a Motion for Relief of Judgment under FRCP 60, and to obtain impeachment evidence. Plaintiff's Exhibit A This request was denied by the Court Clerk, at the direction of the Tribe's Chief Judge; indicating the case was closed. Plaintiff's Exhibit B

8
9
10
11
12

The office of Plaintiff's attorney had previously sought dismissal of a Domestic Violence Petition, filed in Suquamish Tribal Court; based on lack of subject matter jurisdiction. The motion was denied. Declaration of Alton B. McFadden II, par. 5

13
14
15
16
17
18
19

Plaintiff's counsel recently attempted to nonsuit a Domestic Violence, pursuant to FRCP 41(a), Petition and Petition for Residential Schedule filed by a non-indian in Suquamish Tribal Court. The Tribal court declined to honor the Petitioner's Notice of Dismissal in both cases; ruling that it had subject matter jurisdiction. Declaration of Steven L. Olsen, par. 7 & 8

20
21
22
23

The Martinezes resided on fee land, owned by Mr. Martinez' brother; a non Indian. The alleged Domestic Violence was alleged to have occurred on that property. Declaration of Daniel Martinez, par. 5, 6, 8 and 11

24
25

Plaintiff's Brief Opposing Motion to Dismiss

- 5

OLSEN & McFADDEN, INC. P.S.
216 Ericksen Ave.
Bainbridge Island, WA 98110
(206)780-0240
(206)780-0318      fax
steve@olsenmcfadden.com

1  Mr. Martinez has commenced his own Divorce case in Kitsap County
2  Superior Court. Ms. Martinez has bee served; but has not responded –
3  except for a limited Notice of Appearance.

### III

### ARGUMENT AND AUTHORITY

**A.    THE TRIBAL COURT LACKS SUBJECT MATTER**

**JURISDICTION IN CIVIL CASES BETWEEN NON-MEMBERS**

For over 30 years, it has been established law that Tribal Courts lack criminal jurisdiction over non- Indians. *Oliphant v. Suquamish Indian Tribe,* 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978)[5]

In 1990, the Supreme Court clarified that its holding in *Oliphant* also applied to Indian non-members. *Duro v. Reina,* 495 U.S. 676, 110 S.Ct. 2053, 109 L.Ed.2d 693 (1990)[6].

---

[5] Rather than exhaust Tribal Court remedies, Oliphant and Belgarde obtained federal writs of habeas corpus after their arrests.

[6] Duro also failed to exhaust Tribal Court remedies; obtaining a writ of habeas corpus after the Tribal Court denied his motion to dismiss

Plaintiff's Brief Opposing Motion to Dismiss

- 6

OLSEN & McFADDEN, INC. P.S.
216 Ericksen Ave.
Bainbridge Island, WA 98110
(206)780-0240
(206)780-0318      fax
steve@olsenmcfadden.com

1
2
3
4
5
6
7
8

"A basic attribute of full territorial sovereignty is the power to enforce laws against all who come within the sovereign's territory, whether citizens or aliens. *Oliphant* recognized that the tribes can no longer be described as sovereigns in this sense. Rather, as our discussion in *Wheeler* reveals, the retained sovereignty of the tribes is that needed to control their own internal relations, and to preserve their own unique customs and social order. The power of a tribe to prescribe and enforce rules of conduct for its own members "does not fall within that part of sovereignty which the Indians implicitly lost by virtue of their dependent status. The areas in which such implicit divestiture of sovereignty has been held to have occurred are those involving the relations between an Indian tribe and nonmembers of the tribe." 435 U.S. at 326."

9
10

*Duro, supra,* 495 U. S. 686, citing *United States v. Wheeler,* 435 U. S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978) (1978),

11
12
13
14
15

In response to *Duro*, Congress amended the Indian Civil Rights Act of 1968.[7] This amendment, commonly called the "*Duro* fix", was held to confirm a tribe's power to criminally prosecute Indian nonmembers for crimes committed within the tribe's reservation. *United States v. Lara,* 541 U.S. 193, 124 S.Ct. 1628, 158 L.Ed.2d 420 (2004). The *Lara* Court noted

16
17

18
19
20
21
22

[7] " '[P]owers of self-government' means and includes all governmental powers possessed by an Indian tribe, executive, legislative, and judicial, and all offices, bodies, and tribunals by and through which they are executed, including courts of Indian offenses; and means the inherent power of Indian tribes, hereby recognized and affirmed, to exercise criminal jurisdiction over all Indians." 25 U.S.C. 1302(2) (*emphasis added*)

23
24
25

Plaintiff's Brief Opposing Motion to Dismiss

- 7

OLSEN & McFADDEN, INC. P.S.
216 Ericksen Ave.
Bainbridge Island, WA 98110
(206)780-0240
(206)780-0318        fax
steve@olsenmcfadden.com

"that the power to prosecute nonmembers was an aspect of the tribes' external relations and hence part of the tribal sovereignty that was divested by treaties and by Congress."

However, Congress could modify or adjust the tribes' status.

*Duro* concluded "that a tribe does not possess the inherent power to prosecute a non-member." 541 U.S. at   205. This was changed by the congressional amendment.

Congress could have, but didn't, provide in the "*Duro* fix" that tribes had the inherent power to exercise civil jurisdiction over non-member Indians. This omission left the judicially determined  limits on Tribal civil jurisdiction intact.

The Supreme Court limited Tribal Court Civil Jurisdiction over nonmembers to two, very limited circumstances. *Montana v. United States*, 450 U.S. 544, 101 S.Ct. 544 , 67 L.Ed.2d 493 (1981)[8] (Holding that the Crow tribe cannot regulate hunting and fishing by non Indians on non Indian fee land)

---

[8] The United States did not attempt to exhaust Tribal Court Remedies before commencing it's action in Federal District Court

Plaintiff's Brief Opposing Motion to Dismiss

- 8

OLSEN & McFADDEN, INC. P.S.
216 Ericksen Ave.
Bainbridge Island, WA 98110
(206)780-0240
(206)780-0318      fax
steve@olsenmcfadden.com

"This Court most recently reviewed the principles of inherent sovereignty in *United States v. Wheeler,* 435 U. S. 313. In that case, noting that Indian tribes are "unique aggregations possessing attributes of sovereignty over both their members and their territory," *id.* at 435 U. S. 323, the Court upheld the power of a tribe to punish tribal members who violate tribal criminal laws. But the Court was careful to note that, through their original incorporation into the United States as well as through specific treaties and statutes, the Indian tribes have lost many of the attributes of sovereignty. *Id.* at 435 U. S. 326. The Court distinguished between those inherent powers retained by the tribes and those divested:

"The areas in which such implicit divestiture of sovereignty has been held to have occurred are those involving *the relations between an Indian tribe and nonmembers of the tribe. . . .*"

"These limitations rest on the fact that the dependent status of Indian tribes within our territorial jurisdiction is necessarily inconsistent with their freedom independently *to determine their external relations.* But the powers of self-government, including the power to prescribe and enforce internal criminal laws, are of a different type. They involve *only the relations among members of a tribe.* Thus, they are not such powers as would necessarily be lost by virtue of a tribe's dependent status." *Ibid.* (Emphasis added.)

Thus, in addition to the power to punish tribal offenders, the Indian tribes retain their inherent power to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members. *Id.* at 435 U. S. 322, n. 18. But exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes, and so cannot survive without express congressional delegation. "

*Montana,* 450 U. S. 563-564

"The Court recently applied these general principles in *Oliphant v. Suquamish Indian Tribe,* 435 U. S. 191, rejecting a tribal claim of inherent sovereign authority to exercise criminal jurisdiction over non-Indians.

Plaintiff's Brief Opposing Motion to Dismiss

- 9

OLSEN & McFADDEN, INC. P.S.
216 Ericksen Ave.
Bainbridge Island, WA 98110
(206)780-0240
(206)780-0318      fax
steve@olsenmcfadden.com

Stressing that Indian tribes cannot exercise power inconsistent with their diminished status as sovereigns, the Court quoted Justice Johnson's words in his concurrence in *10 U. S. 147 -- the first Indian case to reach this Court -- that the Indian tribes have lost any "right of governing every person within their limits except themselves." 435 U.S. 209. Though Oliphant only determined inherent tribal authority in criminal matters, the principles on which it relied support the general proposition that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe. To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. Williams v. Lee, supra, at 358 U. S. 223; 194 U. S. 152-154. A tribe may also retain inherent power* to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe."

*Montana,* 450 U.S. at 565

In *Strate v. A-1 Contractors*, 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997), the Supreme Court held that tribes did not have jurisdiction over a civil suit between nonmembers (some Plaintiffs were members). Plaintiff had sued for damages incurred in a motor vehicle accident on a state highway within the reservation.

"Our case law establishes that, absent express authorization by federal statute or treaty, tribal jurisdiction over the conduct of nonmembers exists only in limited circumstances."

Plaintiff's Brief Opposing Motion to Dismiss

- 10

OLSEN & McFADDEN, INC. P.S.
216 Ericksen Ave.
Bainbridge Island, WA 98110
(206)780-0240
(206)780-0318      fax
steve@olsenmcfadden.com

*Strate,* 520 U.S. at

"*Montana* thus described a general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation, subject to two exceptions: The first exception relates to nonmembers who enter consensual relationships with the tribe or its members; the second concerns activity that directly affects the tribe's political integrity, economic security, health, or welfare."

*Strate,* 520 U.S. at 446

Tribal Courts are not Courts of General Jurisdiction with respect to activities of non-members; because a tribe's inherent adjudicative jurisdiction over non-members is at most only as broad as its legislative jurisdiction. *Nevada v. Hicks,* 533 U.S. 353, 121 S.Ct. 2304, 15 L.Ed.2d 398 (2001) (Holding that the Fallon Paiute-Shoshone Tribe lacked jurisdiction over  civil suit against California State game wardens alleging torts based on their execution of a state court search warrant on reservation land).

Both *Strate*  and *Hicks*  gave illustrative examples of circumstances included within the two *Montana* exceptions to the general rule that tribes do not have civil jurisdiction over disputes involving non-members. These

Plaintiff's Brief Opposing Motion to Dismiss

- 11

OLSEN & McFADDEN, INC. P.S.
216 Ericksen Ave.
Bainbridge Island, WA 98110
(206)780-0240
(206)780-0318        fax
steve@olsenmcfadden.com

1  examples did not include dissolution of a marriage between nonmembers;

2  nor did they include Domestic Violence Protection Orders involving

3  nonmembers – particularly when the acts are alleged to have occurred on

4  fee land.

5

6       "Hitherto, the absence of tribal ownership has been virtually

7  conclusive of the absence of tribal civil jurisdiction; with one minor

8

9  exception, we have never upheld under *Montana* the extension of tribal civil

10  authority over nonmembers on non-Indian land."

11

12  *Hicks,* 533 U.S. at 360

13

14       The narrow scope of the two *Montana* exceptions was recently

15  clarified in *Plains Commerce Bank v. Long Family Land & Cattle Co., Inc,*

16

17  544 U.S._____, ____S.Ct._____, ____L.Ed.2d____(No. 07–411. Argued

18  April 14, 2008—Decided June 25, 2008)

19

20       "But tribes do not, as a general matter, possess authority over non-
Indians who come within their borders: "[T]he inherent sovereign powers of
21  an Indian tribe do not extend to the activities of nonmembers of the
tribe." *Montana*, at 450 U. S., at 565. As we explained in *Oliphant* v.
22  *Suquamish Tribe*, 435 U. S. 191 (1978), the tribes have, by virtue of their
23

24  Plaintiff's Brief Opposing Motion to Dismiss

25  - 12

OLSEN & McFADDEN, INC. P.S.
216 Ericksen Ave.
Bainbridge Island, WA 98110
(206)780-0240
(206)780-0318       fax
steve@olsenmcfadden.com

1   incorporation into the American republic, lost "the right of governing . . .
2   person[s] within their limits except themselves." *Id.*, at 209 (emphasis and
    internal quotation marks omitted).

3          This general rule restricts tribal authority over nonmember activities
    taking place on the reservation, and is particularly strong when the
4   nonmember's activity occurs on land owned in fee simple by non-Indians—
    what we have called "non-Indian fee land." *Strate* v. *A–1 Contractors*,
5   520 U. S. 438, 446 (1997) (internal quotation marks
6   omitted)"

7          544 U.S. Slip opinion, page 9

8          "Given *Montana*'s " 'general proposition that the inherent sovereign
9   powers of an Indian tribe do not extend to the activities of nonmembers of
    the tribe,' " *Atkinson, supra*, at 651 (quoting *Montana, supra*, at 565), efforts
10  by a tribe to regulate nonmembers, especially on non-Indian fee land,
    are "presumptively invalid," *Atkinson, supra*, at 659. The burden rests on
11  the tribe to establish one of the exceptions to *Montana*'s general rule that
12  would allow an extension of tribal authority to regulate nonmembers on
    non-Indian fee land. *Atkinson*, 532 U. S., at 654. These exceptions are
13  "limited" ones, *id.*, at 647, and cannot be construed in a manner that would
14  "swallow the rule," *id.*, at 655"

15         544 U.S. Slip opinion, page 11 (emphasis added)
16

17         "Tellingly, with only "one minor exception, we have never upheld
    under *Montana* the extension of tribal civil authority over nonmembers *on
18  non-Indian land.*" *Hicks, supra,* at 360 (emphasis added)."

19         544 U.S. Slip opinion at page 14
20

21         "By virtue of their incorporation into the United States, the tribe's
    sovereign interests are now confined to managing tribal land, see
22  *Worcester*, 6 Pet., at 561 (persons are allowed to enter Indian land only
    "with the assent of the [tribal members] themselves"), "protect[ing] tribal
23

24  Plaintiff's Brief Opposing Motion to Dismiss

25  - 13

OLSEN & McFADDEN, INC. P.S.
216 Ericksen Ave.
Bainbridge Island, WA 98110
(206)780-0240
(206)780-0318      fax
steve@olsenmcfadden.com

1   self-government," and "control[ling] internal relations," see *Montana*, *supra*, at 564."

2

3       544 U.S. Slip Opinion at page 16

4       As to the first *Montana* exception, the Court made clear that mere

5   entry onto a reservation and purchase of fee land within the reservation,

6   does not create a consensual relationship with the tribe.

7

8       "… nonmembers have no part in tribal government— they have no
say in the laws and regulations that govern tribal territory. Consequently,
9   those laws and regulations may be fairly imposed on nonmembers only if
the nonmember has consented, either expressly or by his actions. Even
10  then, the regulation must stem from the tribe's inherent sovereign authority
to set conditions on entry, preserve tribal self-government, or control
11  internal relations. See *Montana*, 450 U. S., at 564.

12      In commenting on the policy goals Congress adopted with the
General Allotment Act, we noted that "[t]here is simply no suggestion" in the
13  history of the Act "that Congress intended that the non-Indians who would
14  settle upon alienated allotted lands would be subject to tribal regulatory
authority." *Id.,* at 560, n. 9. In fact, we said it "defies common sense to
15  suppose" that Congress meant to subject non-Indians to tribal jurisdiction
16  simply by virtue of the nonmember's purchase of land in fee simple. *Ibid.*"

17      544 U.S. Slip Opinion at page 18

18

19      "The second *Montana* exception stems from the same sovereign
interests that give rise to the first, interests that do not reach to regulating
20  the sale of non-Indian fee land. The second exception authorizes the tribe
to exercise civil jurisdiction when non-Indians' "conduct" menaces the
21   "political integrity, the economic security, or the health or welfare of the
tribe." *Montana*, 450 U. S., at 566. The conduct must do more than injure
22  the tribe, it must "imperil the subsistence" of the tribal community. *Ibid.* One
23  commentator has noted that "th[e] elevated threshold for application of the

24  Plaintiff's Brief Opposing Motion to Dismiss

25  - 14

OLSEN & McFADDEN, INC. P.S.
216 Ericksen Ave.
Bainbridge Island, WA 98110
(206)780-0240
(206)780-0318        fax
steve@olsenmcfadden.com

second *Montana* exception suggests that tribal power must be necessary to avert catastrophic consequences." Cohen §4.02[3][c], at 232, n. 220."

544 U.S. Slip Opinion at page 22 - 23

The marital status of two nonmembers, including the disposition of their debts, property, cash flow, and custody of their children, is of no concern to the Suquamish tribe.[9]

Whatever happened at the Martinez home on the morning of February 27, 2008, on fee land, involving two nonmembers. the alleged activity was not conduct that menaces the "political integrity, the economic security, or the health or welfare of the tribe." Domestic Violence, even if it had occurred, did not "imperil the subsistence" of the tribal community. Though Domestic Violence is a serious problem, adjudicating Ms. Martinez' allegations in tribal vs. state court is not necessary to "avert catastrophic consequences."

---

[9]  This case is distinguishable from *Saunders v. Robinson,* 864 F.2d 630 (9th Cir. 1988); which held that a tribe and state have concurrent jurisdiction regarding custody of a minor tribal member. Arguably, that may be one of the rare examples of applicability of the second *Montana* exception. *Cf. Boozer v. Wilder,* 381 F.3d 931 (9th Cir., 2004)

Plaintiff's Brief Opposing Motion to Dismiss

- 15

OLSEN & McFADDEN, INC. P.S.
216 Ericksen Ave.
Bainbridge Island, WA 98110
(206)780-0240
(206)780-0318        fax
steve@olsenmcfadden.com

## B.   WHERE LACK OF SUBJECT MATTER JURISDICTION IS CLEAR, PLAINTIFF IS NOT REQUIRED TO EXHAUST THE JURISDICTIONAL DISPUTE IN TRIBAL COURT

Defendants have moved to dismiss this case for failure to exhaust tribal court remedies.

First, the remedy for failure to exhaust tribal court remedies is stay of the federal court proceeding. As noted in *Strate, supra*

"(In *Iowa Mutual*) we remanded, as in *National Farmers,* for a determination whether "the federal action should be stayed pending further Tribal Court proceedings or dismissed." 480 U. S., at 20, n. 14. The Court recognized in *Iowa Mutual* that the exhaustion rule stated in *National Farmers* was "prudential," not jurisdictional. 480 U. S., at 20, n. 14; see also *id.,* at 16, n. 8 (stating that "[e]xhaustion is required as a matter of comity, not as a jurisdictional prerequisite")"

*Strate,* 520 U.S. at 451

*National Farmers Union Insurance Cos. V. Crow Tribe.,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed2d 818 (1985) was decided post – *Oliphant.* At that time, the Court declined to extend *Oliphant* to civil cases.

"Thus, we conclude that the answer to the question whether a tribal court has the power to exercise civil subject matter jurisdiction over non-

Plaintiff's Brief Opposing Motion to Dismiss

- 16

OLSEN & McFADDEN, INC. P.S.
216 Ericksen Ave.
Bainbridge Island, WA 98110
(206)780-0240
(206)780-0318        fax
steve@olsenmcfadden.com

1   Indians in a case of this kind is not automatically foreclosed, as an

2   extension of *Oliphant* would require."

3   *National Farmers Union,* 471 U. S. 856

4

5   Though *National Farmers Union* was decided in 1985, it made no

6   reference to *Montana v. U.S.,* decided four years earlier. Since *National*

7   *Farmers*, the Supreme Court has repeatedly endorsed *U.S. v Montana* in

8   *Strate, Hicks and Plains Commerce*. These subsequent rulings have

9   foreclosed tribal court civil jurisdiction over nonmembers, two narrowly

    construed exceptions.

10

11   "When, as in this case, it is plain that no federal grant provides for

12   tribal governance of nonmembers' conduct on land covered by *Montana*'s

13   main rule, it will be equally evident that tribal courts lack adjudicatory

     authority over disputes arising from such conduct. As in criminal

14   proceedings, state or federal courts will be the only forums competent to

15   adjudicate those disputes. See *National Farmers Union Ins. Cos.* v.*Crow*

16   *Tribe,* 471 U. S. 845, 854 (1985). Therefore, when tribal-court jurisdiction

     over an action such as this one is challenged in federal court, the otherwise

17   applicable exhaustion requirement, see *supra,* at 449–450, mustgive way,

     for it would serve no purpose other than delay. Cf. *National Farmers,* 471

     U. S., at 856, n. 21; *supra,* at 449, n. 7."

18   *Strate,*  520 U.S. 458 Footnote 14

19   Though *Iowa Mutual Insurance Co. v. LaPlante,* 480 U.S. 9, 107 S.Ct.

20   971, 94 L.Ed.2d 10 (1987)  did mention *Montana v U.S.*, it did do so for a

21   proposition that has since been rejected by *Plains Commerce Bank:*

22

23   "Tribal authority over the activities of non-Indians on reservation lands

     is an important part of tribal sovereignty. *See Montana v. United States,*

24   Plaintiff's Brief Opposing Motion to Dismiss

25   - 17

OLSEN & McFADDEN, INC. P.S.
216 Ericksen Ave.
Bainbridge Island, WA 98110
(206)780-0240
(206)780-0318        fax
steve@olsenmcfadden.com

450 U. S. 544, 450 U. S. 565-566 (1981); *Washington v. Confederated Tribes of Colville Indian Reservation,* 447 U. S. 134, 447 U. S. 152-153 (1980); *Fisher v. District Court,* 424 U.S. at 424 U. S. 387-389. Civil jurisdiction over such activities presumptively lies in the tribal courts, unless affirmatively limited by a specific treaty provision or federal statute."

*Iowa Mutual Insurance Co.,* 480 US at 18

"Given *Montana*'s " 'general proposition that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe,' " *Atkinson, supra,* at 651 (quoting *Montana, supra,* at 565), efforts by a tribe to regulate nonmembers, especially on non-Indian fee land, are "presumptively invalid," *Atkinson, supra,* at 659. The burden rests on the tribe to establish one of the exceptions to *Montana*'s general rule that would allow an extension of tribal authority to regulate nonmembers on non-Indian fee land. *Atkinson,* 532 U. S., at 654.

*Plains Commerce Bank,* 544 U.S. slip opinion at page 11

"In *National Farmers Union* we recognized exceptions to the exhaustion requirement, where "an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, . . . or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction," *id.,* at 856, n. 21 (internal quotation marks omitted). None of these exceptions seems applicable to this case, but we added a broader exception in *Strate:* "[w]hen . . . it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by *Montana*'s main rule," so the exhaustion requirement "would serve no purpose other than delay." 520 U. S., at 459–460, and n. 14."

*Nevada v. Hicks,* 533 U.S. at 368

Plaintiff's Brief Opposing Motion to Dismiss

- 18

OLSEN & McFADDEN, INC. P.S.
216 Ericksen Ave.
Bainbridge Island, WA 98110
(206)780-0240
(206)780-0318      fax
steve@olsenmcfadden.com

1   Because the Martinezes Divorce and the DV Protection Order clearly

2   do not fall within the two narrowly construed *Montana* exceptions, the

3   Suquamish Tribe has no colorable claim of jurisdiction. *Marceau v.*

4   *Blackfeet Housing Authority,* 540 F.3d 916 is distinguishable, because the

5

6   dispute was between  tribal members and an entity created by the tribe,

7   involving a contract performed on tribal land. Thos facts made tribal

8   jurisdiction over the dispute "unquestionably colorable. 540 F.3d 921 No

9

10  such facts exist here.

11  Staying or dismissing this case for the Suquamish Tribal Court to

12  deny our motions to dismiss would serve no purpose except delay.

13  **C. CHALLENGING TRIBAL COURT JURISDICTION IN**

14

15  **SUQUAMISH TRIBAL COURT WOULD BE FUTILE**

16  **As stated in *National Farmers Union***

17  "We did not suggest that exhaustion would be required where an
assertion of tribal jurisdiction "is motivated by a desire to harass or is

18  conducted in bad faith," *cf. Juidice v. Vail,* 430 U. S. 327, 430 U. S. 338

19  (1977), or where the action is patently violative of express jurisdictional
prohibitions, or where exhaustion would be futile because of the lack of an

20  adequate opportunity to challenge the court's jurisdiction."

21

22  *National Farmers Union,* 471 U. S. 857, n. 22

23

24  Plaintiff's Brief Opposing Motion to Dismiss

25  - 19

OLSEN & McFADDEN, INC. P.S.
216 Ericksen Ave.
Bainbridge Island, WA 98110
(206)780-0240
(206)780-0318      fax
steve@olsenmcfadden.com

1  Given that the Suquamish Tribal Court has already ruled in other

2  cases that it has civil jurisdiction over nonmembers, bringing a motion to

3  dismiss the Martinez cases would be a waste of time; and only serve to

delay a ruling on this issue at added expense to the parties.

4  This is especially the case, when the Chief Judge prevents counsel

5  from obtaining a record of the DV protection Order hearing, because the

6  "case is closed"; thereby preventing review of the record in order to bring a

7  meaningful Motion for Relief, pursuant to FRCP 60, and depriving Mr.

8  Martinez of valuable impeachment evidence.

9  ## D. MR. MARTINEZ' APPEARANCE IN RESPONSE TO MS.

10  ## MARTINEZ' PETITIONS DOES NOT CONSTITUTE "CONSENT"

## TO TRIBAL COURT JURISDICTION

11  Defendants cite *Smith v. Salish Kootenai College,* 434 F.3d 1127 (9th

12  Cir. 2006) for the proposition that Mr. Martinez' appearance and response

13  to the Petitions constituted consent to Tribal Court Jurisdiction. Defendants

14  misread *Smith.*

15  "The Court's recent cases, and our own experience with the *Montana*

16  exceptions, demonstrate that there are two facts courts look to when

17  considering a tribal court's civil jurisdiction over a case in which a

18  nonmember is a party. First, and most important, is the party status of the

19  nonmember; that is, whether the nonmember party is a plaintiff or a

20  defendant. As Justice Souter observed in *Nevada v. Hicks,* "[i]t is the

21  membership status of the unconsenting party, not the status of real

22  property, that counts as the primary jurisdictional fact." 533 U.S. 353, 382,

23  121 S.Ct. 2304, 150 L.Ed.2d 398 (2001) (Souter, J., concurring). The Court

has repeatedly demonstrated its concern that tribal courts not require

"defendants who are not tribal members" to "defend [themselves against

24  Plaintiff's Brief Opposing Motion to Dismiss

25  - 20

OLSEN & McFADDEN, INC. P.S.
216 Ericksen Ave.
Bainbridge Island, WA 98110
(206)780-0240
(206)780-0318      fax
steve@olsenmcfadden.com

ordinary claims] in an unfamiliar court." *Strate,* 520 U.S. at 442, 459, 117 S.Ct. 1404."

*Smith,* 434 F.3d at 1131

The *Smith* Court noted that

"where the nonmembers are *defendants,* the Court has thus far held that the tribes lack jurisdiction, irrespective of whether the claims arose on Indian lands. *See Hicks,* 533 U.S. at 356, 121 S.Ct. 2304 (claims arose on Indian fee lands); *Montana,* 450 U.S. at 547, 101 S.Ct. 1245 (claims arose on non-Indian lands within the reservation)."

434 F.3d at 1132

The *Smith* Court avoided that obstacle by treating Mr. Smith as a Plaintiff; because the tribal court had realigned his crossclaim against the co-defendant. This, more than Mr. Smith's mere appearance, swayed the court. Because of *Smith's* procedural history, it should not be relied on to infer consent to jurisdiction by Mr. Martinez.

Similarly, the unique facts in *Atwood v. Fort Peck Tribal Court Assiniboine,* 513 F.3d 943 (9th Cir. 2008). *Atwood* relied on *Smith* for the proposition that filing an action in Tribal court raises a "colorable" argument for tribal court jurisdiction in a subsequent claim. However, in *Atwood,* (in contrast to this case) the first action for custody was not dismissed (the

Plaintiff's Brief Opposing Motion to Dismiss

- 21

OLSEN & McFADDEN, INC. P.S.
216 Ericksen Ave.
Bainbridge Island, WA 98110
(206)780-0240
(206)780-0318          fax
steve@olsenmcfadden.com

non-indian father had agreed to the maternal aunt having custody of the child); and the second action was for custody of the same child after the mother died. Though not expressly stated, it appears that the child in question was a tribal member.

The *dicta* in *Atwood*, if it ever was law, was refuted in *Plains Commerce Bank;* which held that the Bank's prior request for a Notice to Quit, from the Tribal Court, did not constitute consent to tribal court jurisdiction for other claims.  544 U.S. Slip Opinion at page 24.

Defendants cite *Insurance Corp of Ireland, Ltd v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 299 , __ L.Ed2d___ (!982) for the proposition that Plaintiff is barred from challenging jurisdiction by *Res Judicata.* In that case, Defendants actually challenged jurisdiction. Furthermore, the Court clearly stated that a defendant can waive *in personam* jurisdiction by failing to challenge jurisdiction; but no actions of the parties can confer subject matter jurisdiction.

### E.   VAWA DOES NOT CONFER SUBJECT MATTER JURISDICTION OVER NONMEMBERS TO TRIBAL COURTS

Plaintiff's Brief Opposing Motion to Dismiss

- 22

OLSEN & McFADDEN, INC. P.S.
216 Ericksen Ave.
Bainbridge Island, WA 98110
(206)780-0240
(206)780-0318      fax
steve@olsenmcfadden.com

1    The Violence against Women Act, 18 U.S.C. 2265 requires state

2 courts to give full faith and credit to DV Protection Orders issued by Tribal

3 Courts. However, a condition of Full Faith and Credit is that the issuing

4
court had jurisdiction to issue the order. Nothing in VAWA conveys that
5
6 jurisdiction.  VAWA provides:

7

8    "  (a) Full Faith and Credit. — Any protection order issued that is
consistent with subsection (b) of this section by the court of one State,
9 Indian tribe, or territory (the issuing State, Indian tribe, or territory) shall be
accorded full faith and credit by the court of another State, Indian tribe, or
10 territory (the enforcing State, Indian tribe, or territory) and enforced by the
11 court and law enforcement personnel of the other State, Indian tribal
government or Territory as if it were the order of the enforcing State or
12 tribe.

13
(b) Protection Order. — A protection order issued by a State, tribal, or
14 territorial court is consistent with this subsection if —
(1) such court has jurisdiction over the parties and matter under the
15 law of such State, Indian tribe, or territory;"

16

17    The statue expressly requires jurisdiction; which must be shown

18 before any order becomes enforceable under 18 USC sec., 2265. If

19 Congress intended to convey such jurisdiction, imposing such a

20 requirement would be superfluous.

21    Plaintiff acknowledges that 18 USC sec., 2265 does give a limited

22 grant of civil jurisdiction in section (e):

23

24 Plaintiff's Brief Opposing Motion to Dismiss

25 - 23

OLSEN & McFADDEN, INC. P.S.
216 Ericksen Ave.
Bainbridge Island, WA 98110
(206)780-0240
(206)780-0318        fax
steve@olsenmcfadden.com

"Tribal Court Jurisdiction. — For purposes of this section, **a tribal court shall have full civil jurisdiction to <u>enforce</u> protection orders**, including authority to enforce any orders through civil contempt proceedings, exclusion of violators from Indian lands, and other appropriate mechanisms, **in matters arising within the authority of the tribe**." (Emphasis added).

Section (e) permits enforcement , not issuance, of DV protection Orders.  This enables Tribal Courts to give Full Faith and Credit to orders issued by state courts. Even this grant is limited only to matters "arising within the authority of the tribe".  If Congress intended to convey jurisdiction to issue DV orders, it would have used the same language in subsection (b) as it did in subsection (e).

Dated: December 5, 2008

_____
STEVEN L. OLSEN
Attorney for Plaintiff
WSBA# 9601

Plaintiff's Brief Opposing Motion to Dismiss

- 24

OLSEN & McFADDEN, INC. P.S.
216 Ericksen Ave.
Bainbridge Island, WA 98110
(206)780-0240
(206)780-0318        fax
steve@olsenmcfadden.com