The Honorable Franklin D. Burgess

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANIEL MARTINEZ,

        Plaintiff,

vs.

HELEN MARTINEZ and
THE SUQUAMISH TRIBE

        Defendants.

**Case No.  C08-5503  FDB**
**Reply Brief -Motion to Dismiss**
NOTED ON MOTION CALENDAR:
December 12, 2008

**Comes Now**, the Suquamish Tribe, by and through counsel undersigned, and respectfully submits this Reply to Plaintiff's Brief Opposing Motion to Dismiss.

**I. NEW FACTS ON OPPOSITION TO MOTION**

The Suquamish Tribe does not dispute any of the new "facts" raised in Plaintiff's Opposition to the Motion to Dismiss.  However, the relevance and applicability of many of these additional facts is remote at best.  For instance, at Page 4 of his Brief, Plaintiff sets out facts related to a criminal proceeding involving Mr. Martinez in Kitsap County Superior Court.  As that Court is the creation of a separate sovereign, proceedings therein can have no bearing on the proceedings here at issue: those civil proceedings related to Mr. Martinez in the

Suquamish Tribal Court. For the same reason, any decision made by the Kitsap County Prosecutor to prosecute or not prosecute Mr. Martinez for domestic violence, or of the Kitsap County Superior Court to dismiss or not dismiss criminal charges against Mr. Martinez, can have no bearing on the Tribal Court proceedings, because the County prosecutor and the State District Court Judge act pursuant to state law, and not under the laws of the Suquamish Tribe. These facts therefore have no relevance to the proceeding at hand.

Concerning events in the Suquamish Tribal Court, at page five of Plaintiff's Brief, Plaintiff characterizes the factual circumstances of his Counsel's attempt to get the record of the Domestic Violence proceedings in the Suquamish Tribal Court in a way that does not jibe with what actually happened. The actual letter[1] that Plaintiff's Counsel sent to the Clerk of the Suquamish Tribal Court did not identify Mr. Martinez as a client of Mr. Olsen, did not state any reason for the request for records, and did not mention the need to prepare for a "Motion for Relief of Judgment under FRCP 60" or "to obtain impeachment evidence." Plaintiff's Brief at 5, ll. 3-4. Therefore, in his Brief, Plaintiff improperly imputes to the Court knowledge that the Court did not have at the time it allegedly made its decision.[2] Plaintiff's Counsel also did not file an entry of appearance in the case until May 14, 2008. (Affidavit of Marilyn Kay, Page 3, par. 11).

Therefore, the record shows that at the time the Tribal Court made its informal decision not to provide Mr. Olsen with the record, it had no knowledge of Mr. Olsen's relationship to

---

[1] Exhibit A to Declaration of Steven L. Olsen.
[2] The Suquamish Tribal Court is like most state and federal trial courts: in order to cause the Court to act on a matter, a party must normally file a written motion, properly captioned, which sets out the relief requested and the reasons therefore. No Motion was presented to the Tribal Court to open the record, or to reconsider the issue of jurisdiction. Therefore there is no "order" denying access to the records, and no "order" considering the court's subject matter jurisdiction. It follows that there is, therefore, no record on this point currently subject to appeal.

Mr. Martinez, no knowledge of why Mr. Olsen wanted the record, no entry of appearance for Mr. Olsen, and no formal Motion to decide. Furthermore, Plaintiff's Counsel's declaration demonstrates that no formal Motion to open the record was ever presented to the Tribal Court, and no formal order was ever entered denying Plaintiff's counsel access to the file.

Finally, there is no evidence that Plaintiff's counsel ever challenged the Tribal Court's informal decision: neither a motion to reconsider, nor an appeal was ever filed.  This is not compelling evidence of a failure on the part of the Tribal Court, but it is significant evidence that Plaintiff's counsel did not attempt to formalize his request to the Tribal Court in the form of a Motion, or to seek appellate relief authorized in the Suquamish Tribal Code.

Plaintiff's Counsel also makes declarations about other unrelated cases he has had before the Suquamish Tribal Court, at paragraphs 6, 7, and 8. (Declaration of Steven L. Olsen.) These allegations are irrelevant to show the conduct of the Tribal Court in the matter now before this Court.  However, these allegations do show that Plaintiff has failed to use any of the appellate remedies available to him in the Suquamish Tribal Court.   These facts should be viewed by this Court for what they are: evidence that the Plaintiff did not take advantage of the Suquamish Appellate Court, and did not exhaust or even test the extent of his Tribal Court remedies.  If, in any court system, Tribal, State or Federal,  a Plaintiff fails to preserve his objection to a ruling, or to appeal a ruling of a trial court that he believes is erroneous, he should not be heard to complain he has received no justice in that court.

For the same reason, the Declaration of Alton B. McFadden II, an attachment to Plaintiff's Brief is also irrelevant except to show that another member of the same law firm also failed to appeal a jurisdictional ruling of the Suquamish Tribal Court in another unrelated case.  Since

none of those parties have sought the aid of this Court, and the record of those proceedings is absent, these allegations should be given no consideration.

## II. ARGUMENT

1. **Plaintiff Misunderstands *Iowa Mutual's* Prudential Rule of Exhaustion and the Futility Exception.**

Plaintiff's Brief states that "given that the Suquamish Tribal Court has already ruled in other cases that it has civil jurisdiction over nonmembers, bringing a motion to dismiss the Martinez cases would be a waste of time; and only serve to delay a ruling on this issue at added expense to the parties." Plaintiff's Brief at 20. *Natl. Farmers Union* establishes the futility exception to exhaustion, 471 U.S. at 856 n. 21: "We do not suggest that exhaustion would be required . . . where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction."

Here, Plaintiff's Counsel have not even formalized a Motion to the Suquamish Tribal Court on jurisdiction, much less utilized the Tribal Appellate system. A recitation of past rulings by the Tribal Court on jurisdiction over non-members is therefore grossly inadequate to show futility under *Natl. Farmers Union*.[3] The question is not what the Tribal Court has ruled concerning its jurisdiction in other cases under other factual scenarios, but what the Tribal Court has ruled in <u>this</u> case under <u>these</u> facts. As Defendants' Motions to Dismiss and Plaintiff's Declarations demonstrate, no jurisdictional record has been developed in this case. The Tribal Court has never been presented with any Motion related to subject matter or *in personam* jurisdiction in either the domestic relations or the divorce case. Where there has been no

---

[3] *See*, discussion of Plaintiff's Declarations of Counsel, in Section I, above.

1  attempt to challenge jurisdiction in the Tribal Court, and where the Tribal Court establishes a

2  complete system for appellate review, a futility claim is simply unavailable.[4]

### 2. The Rule of Exhaustion Remains Good Law.

Plaintiff's Brief appears to rely on *Strate,* and its progeny as authority for a proposition that tribal court jurisdiction over non-Indians on fee land within the reservation is <u>always</u> precluded. Certainly, *Strate*, *Hicks*, *Atkinson*, and now *Plains Commerce Bank v. Long Cattle Co.*, 544 U.S. ___ (2008), all go to the proposition that a Tribe's authority over non-Indians on fee land within the reservation is tenuous, and subject to fact-intensive inquiry into the nature of the authority the Tribe seeks to impose on the non-member, and into the conduct of the non-member it seeks to regulate.

There remain few bright line rules for determining precisely where a tribe's inherent civil authority over non-members within the reservation begins and ends.[5] We do know that the fee status of lands within the reservation signals caution to tribes attempting to regulate the use or possession of that fee land. *See, e.g., Brendale v. Confederated Tribes and Bands of the Yakima Indian Nation,* 492 U.S. 408 (1989)(allowing tribal regulation, through zoning of some fee lands, but not all fee lands, within the reservation); *Montana v. U.S.*, (striking down a tribe's authority to regulate hunting and fishing on non-member owned fee land); *Plains Commerce Bank*, (striking down a tribe's authority to regulate ownership of bank-owned fee land through adjudicative proceedings) *Strate,* ( striking down a tribe's authority to adjudicate a motor vehicle accident occurring between two non-members on a state highway right of way).

---

[4] At the time *Natl. Farmers Insurance* was decided, a significant number of tribes did not have appellate systems, and several had no court system.
[5] *Cf. Oliphant v. Suquamish Tribe*, which established without exception, that tribal courts do not have criminal jurisdiction over non-Indians.

The exceptions to the Supreme Court's presumption against tribal civil jurisdiction over non-Indians on fee land are set out in *Montana v. United States*, 450 U.S. at 565-566.  The *Montana* exceptions still have vitality when a tribe seeks to regulate non-member conduct on fee lands, either under the first "consensual relations" exception, or under the second "harmful conduct" exception. *See e.g., Plains Commerce*, 544 U.S. ___, Slip op. at 15-16 (2008).  No court can assess a tribal court's authority over non-Indians on fee land within the reservation without recourse to *Montana,* because if the tribe's authority does not fall within one of the *Montana* exceptions, its authority is "presumptively invalid." *Atkinson* at 659.   If the inquiry stopped at those words, then tribal court exhaustion would never be required.  That is the intersection of *Natl. Farmers Union* and *Montana* that Plaintiff fails to recognize.

We also know that under *Montana*'s second exception, for example, tribes can regulate some non-member <u>conduct</u> on non-member fee land. *See*, *Plains Commerce Bank*, slip op. at 18:

> But the key point is that any threat to the tribe's sovereign interests flows from changed uses or nonmember activities, rather than from the mere fact of resale.  The tribe is able fully to vindicate its sovereign interests in protecting its members and preserving tribal self-government by regulating nonmember *activity* on the land, within the limits set forth in our cases.

*Id.* (emphasis in original).

However, the determination of when this is permissible will always require a fact-intensive inquiry.  Thus, *Nat'l. Farmers Union*'s statement that "the existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch Policy as embodied in treaties, and elsewhere, and administrative or judicial decisions" is as true today as it was in 1985. *Nat'l. Farmers Union*,

471 U.S. at 856-857.   And that inquiry should, in the first instance, occur in the Suquamish Tribal Court.   This rule applies even where a tribal court's subject matter is subject to debate.  See, e.g., *Atwood v. Fort Peck Tribal Court*, 513 F.3d 943 (9th Cir. 2008), *Marceau v. Blackfeet Housing Auth.*, 540 F.3d 916 (9th Cir. 2008), and *Boozer v. Wilder*, 381 F.3d 931 (9th Cir. 2004) (exhaustion proper when tribal court jurisdiction is "colorable").   *Natl. Farmers Union* remains good law, and was acknowledged again in *Plains Commerce Bank v. Long Cattle Co.*, 544 U.S. ___ (2008) Slip op. at 5.

In *Plains Commerce*, the Cheyenne River Sioux Tribal Court developed a full record at the Tribal Court and the Tribal Court of Appeals before the matter was ever heard by the Federal District Court.  *Id.*, Slip op. at 3-4.   Despite the fact that the Supreme Court ultimately concluded that the Cheyenne River Sioux Tribal Court did not have jurisdiction to regulate the sale of the Bank's fee land within the reservation, the Court, notably, did not say that tribal court exhaustion should not have been required in this case.

The rule of exhaustion does not require that a tribe affirmatively <u>know</u> it has jurisdiction for the exhaustion rule to apply: rather, this rule encourages and fosters a reasoned inquiry on the part of the tribal court system into whether or not it has jurisdiction to proceed.   That inquiry develops the factual record that all Tribal and Federal reviewing Courts will then use to determine whether the tribal court's assertion of jurisdiction was correct.   Because Plaintiff has not even tested jurisdiction in the Suquamish Tribal Court, that Court has made no record of its jurisdiction, has not analyzed its jurisdiction under Federal law, and has not looked to see

whether either of the *Montana* exceptions apply.[6]  In short, Plaintiff's advocacy on the issue of jurisdiction is a required component of the exhaustion doctrine, and this Court should allow the Tribal Court to fully develop the jurisdictional record before making a final federal question determination on that issue.

### 3. The Tribal Court Has Sufficiently Colorable Jurisdiction To Require Exhaustion.

The Tribal Court has three distinct bases for colorable jurisdiction over the domestic violence action and the divorce proceedings that have sprung at least twice from those domestic violence actions.  First, the Suquamish Tribe has significant authority over Ms. Martinez, who as an Alaska Native, is subject to the Tribe's inherent criminal jurisdiction over non-member Indians as re-affirmed by Congress under 25 U.S.C. §1301(2).  The United States Supreme Court asserted in *United States v. Lara*, 541 U.S. 193 (2004), that Congress has the authority to "relax" judicial restrictions on the inherent authority of tribes, and clarified that when Congress enacted the amendments to the statute, it did not delegate federal power to the Tribes, but did effectively relax the restrictions the Supreme Court had put in place in *Duro*, *Hicks*, and *United States v. Wheeler*, 423 U.S. 313 (1978), which purported to restrict the tribes' inherent authority to their own memberships.  *Lara*, 541 U.S. at 205-207.   *United States v. Lara* remains largely unexplored by the federal court system for its implications on other aspects of tribal sovereignty, particularly concerning tribal powers over non-member Indians.[7]

---

[6] Indeed, because no record has been developed below, it is unclear whether the Court has had the land and ownership status of Plaintiff's home brought to its attention.  The Petition for the Domestic Violence Protection Order does not state where the violence occurred.

[7] The Concurrence of Justice Kennedy, 541 U.S. 211, and of Justice Thomas, 541 U.S. 214, illustrates the some of the unexplored implications of the *Lara* decision.  Justice Kennedy notes that the decision effectively disturbs the court's earlier presumptions about tribal jurisdiction established in *Wheeler, Strate*, and *Montana*.  *See Lara*, 541 U.S. at 211-212.

Because the Suquamish Tribe's civil authority over non-member Indians is less restrictive of a non-member Indian's liberty than the criminal jurisdiction affirmed in *Lara*, and because *Lara* affirmed that criminal jurisdiction over non-member Indians is "inherent" in the tribes, *Lara*, 451 U.S. at 210, the Suquamish Tribe takes the position that, if, pursuant to its inherent sovereign authority, the Tribe can deprive Ms. Martinez of her liberty, it may also offer her the protections of its civil laws under that same authority.[8]

A primary concern of the United States Supreme Court, when it originally struck down tribes' criminal jurisdiction over non-member Indians was its perception that non-members are subject to trial "by political bodies that do not include them." *Duro v. Reina,* 495 U.S. 676, 693 (1990), and because the individual's liberty interest is so compelling. *Id*., 495 U.S. at 692. Because Congress has since affirmed the tribes' inherent criminal authority over non-member Indians, the Suquamish Tribe and Helen Martinez can no longer be considered legal "strangers." But that perception, at least as it applies to the Suquamish Tribe, was incorrect in 1990, and it is incorrect today. For purposes of Suquamish civil authority, the Tribe makes no statutory distinction between Ms. Martinez and a Tribal member.[9] The Tribe has afforded Ms. Martinez its police services, its victim assistance services, its health and counseling services, and its courts. *See,* Affidavit of Marilyn Kay, attached to Tribe's Motion to Dismiss. No case currently says so, but the Suquamish Tribe here asserts that if the United States recognizes this Tribe's criminal authority over Helen Martinez, it must also recognize Helen Martinez' right to avail herself of every civil remedy the Tribe offers her, including the right to seek relief from

---

[8] Because the tribe has criminal jurisdiction over Ms. Martinez, and because its Domestic Violence statute does not preclude affording relief to a nonmember, the Tribal Court was equally empowered to afford Mr. Martinez its protection in the 2007 action.

[9] *See*, Tribal code provisions attached as Exhibit 3 to Tribe's Motion to Dismiss.

1  extreme personal violence committed against her by another and the right to seek a divorce, as
2  is allowed under the Suquamish Tribal Code.
3      For this reason, the Tribal Court clearly did have civil jurisdiction over one of the parties
4  in each of the proceedings.
5  
6      **4.    Under The Rule in *Smith*, Daniel Martinez and Helen Martinez Consented To Tribal Court Jurisdiction in the Domestic Violence Proceeding.**
7      Concerning Mr. Martinez, the Tribe also had authority over him because he consented to
8  the jurisdiction of the Suquamish Tribal Court in a manner quite similar to the Plaintiffs in
9  *Smith,* and in *Atwood*.  As for Helen Martinez, the Tribal Court has jurisdiction over her in each
10 of the proceedings because she invoked the jurisdiction of the Suquamish Tribal Court when she
11 filed her initial pleadings in each of the matters, and because she is a party Plaintiff in each of
12 the matters.  This meets the *Smith/Atwood* consent test for consent with nothing more.
13 
14     As for Mr. Martinez*,* Plaintiff's Brief acknowledges expressly that Mr. Martinez had
15 invoked the jurisdiction of the Tribal Court the previous year in a domestic violence proceeding
16 against Helen in precisely the same Court, under the same judge, under the same Suquamish
17 Statute, and with identical parties, and received relief from the Court.  Mr. Martinez therefore
18 also consented to the jurisdiction of the Tribal Court, and the mere realignment of the parties the
19 following year could not divest the Court of continuing jurisdiction over the parties when each
20 had knowingly appeared in the Suquamish Tribal Court, and each had sought and received the
21 aid of the Court as the result of a continuing pattern of domestic violence between the same
22 parties.
23     Neither Martinez is a stranger to the Suquamish Tribal Court, and neither Martinez can
24 claim to have been disadvantaged by the proceedings in the Tribal Court.  Under these unique

factual circumstances, there is sufficient showing of *Smith/Atwood* consent to require exhaustion of tribal remedies.[10]

### 5. VAWA Delegates Federal Civil Authority to the Tribal Court.

Plaintiff's argument that VAWA is not a delegation of authority to tribes misreads the statute and the critical language in 18 U.S.C. § 2265(b). This section departs from existing Federal common law when it validates tribal court protection orders issued under tribal law:

"A protection order issued by a …tribal…court is consistent with this section if-

(1) such court has jurisdiction over the parties and matter under the law of such…Indian tribe."

*Id.* Therefore, under the plain words of the statute, jurisdiction over the parties and the matter is not established pursuant to federal common law concepts, but pursuant to the law of the Tribe entering and enforcing the order. The Suquamish Tribe's Ordinance does not distinguish between members and non-members in determining the Ordinance's applicability. *See*, Exhibit 3 to Tribe's Motion to Dismiss. Because the statute does not reference federal common law for purposes of establishing jurisdiction, but also does not reference the "inherent authority" of the tribes, as Congress did in 25 U.S.C. § 1302(c) post-*Duro,* it is plain that this language delegates Federal authority to tribes in order to fulfill the purposes of VAWA.[11]

---

[10] At Page 22 of Plaintiff's Brief, Plaintiff references the Decision in *Plains Commerce*, Slip op. at 23-24 as a refutation of *Smith* and *Atwood*. It is not. In *Plains Commerce*, the bank requested the Tribal Court to appoint a process server able to serve process related to the bank's state court action. *Id.* The Bank contested Tribal Court jurisdiction as soon as it was named as a defendant in the Tribal Court action. The Supreme Court said: "Under these circumstances, we find that the Bank did not consent by its litigation conduct to tribal court jurisdiction…" *Id*. At 23-24. *Plains Commerce*, therefore, does not foreclose *Smith*, or *Atwood*, which each had decidedly different facts supporting consent, as do the facts of this case.

[11] The VAWA provisions on stalking, found at 18 U.S.C. § 2261A(1) and A(2), and the definitions section of VAWA found at 18 U.S.C. § 2266 also make it clear that the federal definition of Indian Country set out in 18 U.S.C 1151 determines the geographic scope of the grant of federal jurisdiction to tribes.

Because VAWA is a federal delegation of authority, the Suquamish Tribal Court cannot be said to have acted entirely as a matter of inherent tribal authority in the domestic violence proceeding, and therefore, the rule of *Montana* does not apply to that proceeding.

In conclusion, there are no applicable exceptions to the exhaustion rule which would prevent the Federal District Court from abstaining in this matter until the Suquamish Tribal Court has had a first opportunity to hear and decide the issue of subject matter jurisdiction.[12] The Tribe has colorable claims to jurisdiction which warrant satisfying the exhaustion rule mandated by *Natl. Farmers Union*, and Plaintiff has offered no compelling reason to decide otherwise.

For all the forgoing reasons, the Suquamish Tribe respectfully renews its request that the Court dismiss this action pending exhaustion of remedies in the Suquamish Tribal Court.

Respectfully submitted this 12th day of December, 2008.

By: /s/ James R. Bellis                     .
James R. Bellis, Esq.
WSBA No. 29226
Tribal Attorney
The Suquamish Tribe
P.O. Box 498
Suquamish, WA 98392-0498
Office: 360-394-4501
Fax:    360- 598-4293
rbellis@suquamish.nsn.us

---

[12] The theories of jurisdiction set out herein are argued on behalf of the Suquamish Tribe in aid of its legislative and adjudicatory jurisdiction. The judges of the Suquamish Tribal Courts have not participated in the framing of the Tribe's Motion to Dismiss, or this Reply.

## CERTIFICATE OF SERVICE

I, James R. Bellis, certify under penalty of perjury under the laws of the State of Washington that on the 12th day of December, 2008, I caused a copy of a proposed order, defendant's exhibits, and this Motion, to be delivered via electronic mailing in .pdf format with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attention of the following:

Steven Olsen
Attorney for Plaintiff
Olsen and McFadden, Inc. P.S.
216 Ericksen Avenue
Bainbridge Island, WA  98110


Jennifer Yogi
Northwest Justice Project
401 Second Avenue S., Suite 407
Seattle, WA  98104


Signed at Suquamish, Washington, this 12th day of December, 2008.


　　　　　_____/s/ James R. Bellis_____
　　　　　James R. Bellis
　　　　　Attorney for Defendant Suquamish Tribe