The Honorable Franklin D. Burgess

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANIEL MARTINEZ,

            Daniel Martinez,

    vs.

HELEN MARTINEZ and
THE SUQUAMISH TRIBE,

          Defendants.

Case No. C08-5503 FDB

**REPLY IN SUPPORT OF
DEFENDANT'S
MOTION TO DISMISS**

NOTED ON MOTION
CALENDAR: December 12, 2008

**I. Relief Requested**

    Defendant Helen Martinez has moved for an order dismissing this action without

prejudice pursuant to FRCP 12(b)(6) and submits the following reply to the Response to her

Motion to Dismiss.

**II. Argument & Authority**

    Controlling case law from the Ninth Circuit Court of Appeals requires that Daniel

Martinez's complaint must be dismissed or stayed to allow the tribal court an opportunity to hear

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

1    any challenge to its civil jurisdiction.  There is clearly a colorable claim of tribal jurisdiction and

2    none of the exceptions to the tribal court exhaustion doctrine apply here.  The Martinezes'

3    domestic relations proceedings should continue to be heard in the tribal court, where they have

4    chosen to litigate in the past, and where Daniel Martinez has the opportunity to challenge the

5    tribal court's jurisdiction if he chooses.

6    **A.  Daniel Martinez concedes he has failed to exhaust his tribal court remedies.**

7         Daniel Martinez does not argue that he has made any attempt to challenge subject matter

8    jurisdiction or personal jurisdiction in either the parties' domestic violence or dissolution

9    proceedings; rather, he asserts that exhaustion is not required because (1) it is plain the

10   Suquamish Tribal Court lacks jurisdiction and (2) exhaustion would be futile.  As discussed

11   below, the facts here do not meet these exceptions to the tribal court exhaustion doctrine.

12   **1.  The Suquamish Tribal Court's jurisdiction is probable given the
     consensual relationship created by Daniel Martinez and the inherent authority of the tribal
13   court to adjudicate domestic relations proceedings involving parties residing within the
     boundaries of the Port Madison Reservation.  Accordingly, Daniel Martinez must exhaust
14   his tribal court remedies.**

15        Daniel Martinez argues that tribal courts' civil jurisdiction over non-Indians has been

16   rigorously limited by *U.S. v. Montana,* 450 U.S. 544, 101 S.Ct. 1245 (1981), and its progeny.  He

17   asserts that because it is plain no federal grant provides for tribal governance of nonmembers'

18   conduct on land covered by *Montana's* main rule, the exhaustion requirement would serve no

19   purpose other than delay.  While it is true that tribal adjudicatory jurisdiction over non-members

20   is ill-defined, *Smith v. Salish Kootenai Coll.,* 434 F.3d 1127, 1137 (9th Cir. 2006) (en banc),

21   quoting *Nevada v. Hicks,* 533 U.S. 353, 376, 121 S.Ct. 2304, 376 (2001) (Souter, J., concurring),

22   the lack of clarity in and of itself disproves Daniel Martinez's assertion that tribal authority here

23   is clearly lacking.  When there is a plausible claim of tribal court jurisdiction, exhaustion is

24

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

1    required.  *Atwood v. Fort Peck Tribal Court Assiniboine and Sioux Tribes,* 513 F.3d 943, 948

2    (9th Cir.2008).  Here, the tribal court's jurisdiction is likely proper, and therefore at least

3    colorable.

4           As a starting point, it is not certain that the *Montana* rule applies to these proceedings.

5    The main rule under *Montana* restricts tribal authority over non-member activities on non-Indian

6    land.  *Montana v. United States*, 450 U.S. at 564-66.  Daniel Martinez argues that the parties'

7    domestic relations proceedings involve only fee land because their home was located on non-

8    Indian fee land within the boundaries of the Port Madison Reservation.  While it's undisputed

9    that Helen Martinez and the children lived on tribal land from 2006-2007, it is true that at other

10   times during the marriage, the family lived in a home located on fee land.  If the actions

11   concerned solely fee land, the *Montana* analysis would apply.  *Allstate Indem. Co. v. Stump*, 191

12   F.3d 1071, 1074 (9th Cir.1999) ("Generally speaking, the *Montana* rule governs only disputes

13   arising on non-Indian fee land, not disputes on tribal land; otherwise, the *Strate* Court's analysis

14   of why a state highway on tribal land was equivalent to non-tribal land would have been

15   unnecessary.")  In addition to the fact that the family lived on both fee land and tribally-owned

16   land, the *Montana* analysis is inapplicable given the nature of the dispute, which involves a

17   relationship, rather than a single incident at a defined location.

18          Even if the *Montana* rule applies, the Martinez proceedings fall within the two exceptions

19   to the main principal: first, jurisdiction is proper when nonmembers enter consensual

20   relationships with a tribe or its members; second, a tribe may exercise civil authority over the

21   conduct of non-Indians when that conduct threatens or impacts the tribe's political integrity,

22   economic security, or health or welfare of the community.  *U.S. v. Montana,* 450 U.S. at 565-

23   566.  Daniel Martinez fails to adequately address the applicability of both these exceptions.

24

REPLY IN SUPPORT MOTION TO DISMISS
CASE NO. C08-5503 FDB
PAGE 3 OF 12

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

First, Daniel Martinez has undoubtedly created a consensual relationship as contemplated by *Montana* and clarified in subsequent case law.  In 2007, Daniel Martinez availed himself of the tribal court by initiating a domestic violence protection order proceeding against Helen Martinez. He asserted the tribal court's jurisdiction over the subject matter and the parties, and was subsequently awarded a temporary order of protection, which granted temporary custody to Daniel, as well as exclusive right to the family residence and vehicle.  Dkt. 9-2, Ex. B.  By itself, this action constitutes a consensual relationship under *Montana*.  *See Smith v. Salish Kootenai Coll.*, 434 F.3d 1127 at 1136 (nonmember's filing suit in tribal court established a consensual relationship[1]); *Atwood v. Fort Peck Tribal Court*, 513 F.3d 943 at 948, (colorable basis for jurisdiction existed when a non-Indian plaintiff had availed himself of a tribal forum in a prior suit, even though the tribal court case at issue was not initiated by plaintiff).

Yet this wasn't the only tribal court action in which Daniel Martinez participated.  Daniel Martinez admits that he appeared in numerous tribal court proceedings during the parties' ten-year residence on the Port Madison Reservation, including a related case which he initiated.  At no time in prior proceedings did Daniel Martinez object to the tribal court's jurisdiction. On the contrary, he appeared as a respondent in an additional dissolution proceeding and a prior protection order proceeding.  Dkt. 9-2, Ex. A.  Daniel Martinez's recurring involvement with the tribal court belies his reliance on the *Strate* decision, Dkt. 10 at p. 20-21, which reasoned that the civil authority of tribal courts is limited to protect non-Indian defendants from having to defend themselves in "an unfamiliar court." *Strate v. A-1 Contractors,* 520 U.S. 438, 459, 117 S.Ct. 1404 (1997).  Likewise, Daniel Martinez's frequent participation in related Suquamish Tribal

---

[1] Daniel Martinez asserts that the Ninth Circuit Court's decision in *Smith v. Salish Kootenai College* is distinguishable because in that case, a lower court had realigned the parties, making a non-tribal member the plaintiff.  Even if *Smith's* holding relied on its determination that the non-member was the plaintiff, the fact that Daniel Martinez has appeared as both petitioner and respondent renders this argument moot.

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

1  Court proceedings distinguishes these facts from those in *Plains Commerce Bank v. Long Family*

2  *Land & Cattle Co., Inc.*, --- U.S. ----, 128 S.Ct. 2709, 171 L.Ed.2d 457 (2008) (seeking the tribal

3  court's aid in serving process on tribal members for a pending state-court action does not

4  constitute consent to tribal court jurisdiction; bank's prior commercial dealings with Indian

5  plaintiffs did not establish consensual relationship with respect to bank's subsequent sale of non-

6  Indian fee land to non-Indians).

7        It also bears repeating that principles of res judicata apply to the tribal court's finding of

8  subject matter jurisdiction.  Having affirmatively asserted the tribal court's jurisdiction over the

9  subject matter and the parties in a related proceeding in 2007 to his benefit, Daniel Martinez now

10  wishes to attack the tribal court's jurisdiction.  Daniel Martinez attempts to distinguish *Insurance*

11  *Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S.Ct. 2099

12  (1982), arguing in that case, "defendants actually challenged jurisdiction."  Dkt. 10 at p. 22.  This

13  misconstrues the proper analysis.  Daniel Martinez *asserted* jurisdiction as the plaintiff- it is

14  Helen Martinez, then the defendant, who would have had the opportunity to object to the court

15  exercising its jurisdiction.  Regardless, the distinction lacks merit.  The Supreme Court has stated

16  that "a party that *has had an opportunity to litigate the question of subject matter jurisdiction*

17  may not …reopen that question in a collateral attack upon an adverse judgment."  *United States*

18  *v. Van Cauwenberghe*, 934 F.2d 1048, 1059 (9th Cir.1991), quoting *Insurance Corp. of Ireland*,

19  456 U.S. at 702 n. 9 (emphasis added).

20        Moreover, Daniel Martinez erroneously minimizes the factually similar and controlling

21  case of *Atwood v. Fort Peck Tribal Court,* 513 F.3d 943 (9th Cir.2008).  He points out that in

22  that case, a previous custody determination in tribal court had not been dismissed.  While it is

23  true that the Martinezes have chosen to dismiss previous dissolutions and domestic violence

24

REPLY IN SUPPORT MOTION TO DISMISS
CASE NO. C08-5503 FDB
PAGE 5 OF 12

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

1    protection order proceedings at various stages of completion, that fact has no bearing on the

2    continuing jurisdiction of the tribal court.  The prior tribal court domestic relations cases *are all*

3    *related* to the instant proceedings.  They all stem from the parties' marital relationship.

4           Second, the Suquamish Tribe has a strong interest in enforcing domestic violence laws as

5    a necessary component of protecting self-government and controlling internal relations; therefore

6    *Montana*'s second exception also applies to these matters.  Daniel Martinez does not even

7    attempt to address the points raised by Helen Martinez in her motion demonstrating that

8    domestic violence impacts the health, safety and welfare of the Suquamish community.  He

9    concedes that domestic violence is a serious problem but fails to explain why such conduct

10   occurring on Indian and non-Indians lands within the Port Madison Reservation would not pose a

11   threat to public safety.  The Suquamish Tribe has an interest in preventing domestic violence

12   because it is not only responsible for protecting individual persons, but must also uphold the

13   general order and well-being of the tribal community.

14          In his analysis of *Montana*'s second exception, Daniel Martinez misunderstands the

15   nature of domestic violence and the relationship to the parties.  The domestic violence alleged by

16   Helen Martinez is not limited to "whatever happened at the Martinez home on the morning of

17   February 27, 2008." Dkt. 10 at page 15.  Domestic violence is a pattern of abusive behavior that

18   is used to gain or maintain power and control over another intimate partner.  *See* United States

19   Department of Justice, Office of Violence Against Women, About Domestic Violence (2007), at

20   1, available at http://www.ovw.usdoj.gov/domviolence.htm.  Behavior intended to intimidate,

21   manipulate, humiliate, isolate, frighten, threaten, blame, or hurt Helen would not be limited to

22   the parties' home located on fee land.   "[A]busive behavior does not occur as a series of discrete

23   events but rather pervades the entire relationship.  The effects of psychological abuse, coercive

24

1    behavior, and the ensuing dynamics of power and control mean that the pattern of violence and

2    abuse can be viewed as a single and continuing entity." *Hernandez v. Ashcroft*, 345 F.3d 824,

3    837 (9th Cir.2003) (internal quotation marks omitted) (citing Mary Ann Dutton, *Understanding*

4    *Women's Responses to Domestic Violence: A Redefinition of Battered Woman Syndrome*, 21

5    Hofstra L. Rev. 1191, 1208 (1993)).

6        Even if the analysis relied on an examination of physical assaults alone, the alleged facts

7    demonstrate that Daniel Martinez's conduct was most likely not confined to a single location. In

8    addition to describing the incident that occurred on February 27th, Helen Martinez's petition for a

9    protection order alleged frequent acts of domestic violence by her husband against her as well as

10   an assault against their daughter.  Dkt. 8-2 at p. 3-4.  It is also important to note that the petition

11   for a domestic violence order for protection is an action that seeks to restrain and regulate

12   conduct within the boundaries of the Port Madison Reservation.  The relief sought is not

13   exclusive to tribal land or fee land within the reservation boundaries.  It would not matter if the

14   events that support the petition had taken place on fee land alone because this is not civil

15   litigation that seeks to adjudicate either a single event, or a series of events.  This is in sharp

16   contrast to *Strate*, which involved a suit for damages for a *past* event, and *Plains Commerce*

17   *Bank*, which addressed a completed transaction of fee land.  The protection order governs future

18   behavior that could occur in a variety of places on the reservation.  Likewise, the dissolution

19   action will regulate the conduct of the parties as it pertains to contact between the two of them,

20   as well as their conduct with regard to their children – conduct that will take place within the

21   boundaries of the Port Madison Reservation, but will not be exclusive to fee land.

22       Furthermore, the domestic violence protection order is directly tied to issues in the

23   parties' dissolution. "Protection order statutes generally permit courts to include custody and

24

**Northwest Justice Project**
**401 Second Avenue S, Suite 407**
**Seattle, Washington 98104**
**Phone: (206) 464-1519  Fax: (206) 624-7501**

1   visitation provisions in the order, demonstrating that state and tribal legislatures have determined

2   that there is a strong link between victim safety and court orders regarding the placement of

3   children." Deborah M. Goelman, *Shelter from the Storm: Using Jurisdictional Statutes to Protect*

4   *Victims of Domestic Violence After the Violence Against Women Act of 2000*, 13 Colum. J.

5   Gender & L. 101, 114 (2004).  Any court making determinations about the custody and visitation

6   for the Martinez children would evaluate the presence of likelihood of harmful conduct, such as

7   physical abuse of a child or a history of acts of domestic violence in determining their best

8   interests.  Because the two proceedings are inexorably tied together, *Montana*'s second exception

9   applies to both proceedings.

10      Helen Martinez maintains that the domestic relations proceedings meet both the

11  consensual relationship and health and safety exceptions to the *Montana* rule; however, even if

12  they did not, the Montana rule only applies when there is no "different congressional direction."

13  As explained in part B below, in passing the Violence Against Women Act, Congress expressly

14  provided that tribal courts should have the authority to issue and enforce domestic violence

15  protection orders.

16          **2.  Daniel Martinez has not demonstrated that exhaustion is futile.**

17      Daniel Martinez correctly notes that tribal exhaustion is not required when there is a

18  demonstrated lack of adequate opportunity to challenge the court's jurisdiction.  *Nat'l Farmers*

19  *Union*, 471 U.S. 845, 856 n. 21, 105 S.Ct. at 2454 n. 21 (1985).  However, the facts in this case

20  do not meet this exception.  Despite the fact that Daniel Martinez has failed to challenge the

21  tribal court's rulings directly or appealed any decisions to the Suquamish Tribal Court of

22  Appeals, he argues that such challenges would be futile.  He claims that because "the Suquamish

23  Tribal Court has already ruled in other cases that it has civil jurisdiction over nonmembers,

24

REPLY IN SUPPORT MOTION TO DISMISS
CASE NO. C08-5503 FDB
PAGE 8 OF 12

**Northwest Justice Project**
**401 Second Avenue S, Suite 407**
**Seattle, Washington 98104**
**Phone: (206) 464-1519  Fax: (206) 624-7501**

1   bringing a motion to dismiss the Martinez cases" would be "a waste of time" and "only serve to

2   delay a ruling on this issue." Dkt. 10 at p. 20; Dkt. 11.  The Tenth Circuit Court of Appeals

3   addressed this argument in *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1508 (10th Cir.1997).

4   In that case, appellants contended that they lacked an adequate opportunity to challenge

5   jurisdiction because the Navajo tribal courts had already determined that they have jurisdiction

6   over non-Indian activities occurring outside the reservation but within Navajo Indian Country.

7   The court found that the argument lacked merit because the tribal courts continue to have

8   authority to dismiss a case for lack of jurisdiction.  Regardless of Daniel Martinez's counsel's

9   past experience with the Suquamish Tribal Court, the simple, uncontroverted fact is that the issue

10  was never raised; no motions were filed challenging jurisdiction in either proceeding, nor was

11  the final Order for Protection appealed to the Suquamish Tribal Court of Appeals.

12      In *Boozer v. Wilder*, 381 F.3d 931 (9th Cir.2004), the Ninth Circuit Court of Appeals also

13  concluded that the appellant failed to demonstrate that tribal court exhaustion was futile.  In that

14  case, a non-Indian defendant father moved to vacate a tribal court custody order without

15  protesting the tribal court's jurisdiction.  After a decision on his motion to vacate had remained

16  pending in the tribal court for one year, the father challenged the tribal court's jurisdiction in

17  federal court, alleging that the delay amounted to futility.  The court found that the father failed

18  to demonstrate that exhaustion would be futile because "Boozer made no effort to exhaust tribal

19  court remedies before filing a federal claim."  *Boozer,* 381 F.3d 931 at 936.

20      **B.  Daniel Martinez's interpretation of VAWA's grant of authority is not consistent with a plain reading of the statute.**

21      *Montana*'s main rule does not apply when there is a separate grant of authority from

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

1    Congress[2].  By enacting the Violence Against Women Act (VAWA), Congress has specifically

2    authorized the tribes to pass laws concerning domestic violence and to adjudicate violations of

3    such laws.  Under VAWA, protection orders issued by tribal courts have full jurisdiction to

4    enforce foreign orders; likewise, their own orders are to be given full faith and credit by state

5    courts and by other tribal courts. 18 U.S.C. § 2265.

6        Though Daniel Martinez alleges that he may not have received the DVPO petition[3], he

7    concedes that he had reasonable notice, responded in writing and appeared at a hearing, which

8    would satisfy VAWA's due process requirements.  It is undisputed that Helen Martinez's

9    domestic violence protection order was issued in accordance with Suquamish tribal law;

10   however, Daniel Martinez asserts that the tribal court lacked jurisdiction under federal case law.

11   He argues that VAWA does not confer civil jurisdiction on tribal courts to issue protection

12   orders and that their civil jurisdiction is limited to the ability to enforce protection orders.  Dkt.

13   10 at page 23-24.  The interpretation proffered by Daniel Martinez simply cannot be reconciled

14   with the plain language of the statute.  18 U.S.C. § 2265 provides:

15       Any protection order *issued* that is consistent with subsection (b) of this section by the
         court of one State, *Indian tribe*, or territory…shall be accorded full faith and credit by the
16       court of another State, Indian tribe, or territory.

17   18 U.S.C. § 2265 (a) (emphasis added).  Subsection (b) then defines when a protection order is

18   consistent with the provision in subsection (a):

19       (1) such court has jurisdiction over the parties and matter *under the law of such State,*
         *Indian tribe, or territory;* and (2) reasonable notice and opportunity to be heard is given

20

21   [2]  Daniel Martinez claims that Congress could have authorized tribes to have unlimited civil jurisdiction over non-
     Indians in the "*Duro* fix," but chose not to.  This is a flawed characterization of Congress's purpose in enacting this
22   legislation.  The *Duro* fix was responding to a particular gap that the *Duro* decision had created in the prosecution of
     crimes within tribal communities.  No civil authority issue was before the Supreme Court in *Duro* and therefore
23   Congress obviously didn't see the need to address a broader spectrum of jurisdictional issues.

     [3]  It appears that Daniel Martinez waived the right to raise this issue.  Failure to receive a copy of the petition for a
24   domestic violence protection order should have been raised before the tribal court at the hearing on March 27, 2008.

REPLY IN SUPPORT MOTION TO DISMISS
CASE NO. C08-5503 FDB
PAGE 10 OF 12

**Northwest Justice Project**
**401 Second Avenue S, Suite 407**
**Seattle, Washington 98104**
**Phone: (206) 464-1519  Fax: (206) 624-7501**

to the person against whom the order is sought sufficient to protect that person's right to due process.

18 U.S.C. § 2265 (b) (emphasis added). Thus, it is clear that under VAWA the Suquamish Tribal Court properly exercised its civil jurisdiction in granting first Daniel, then Helen, orders for protection.

### C.  Dismissal of Daniel Martinez's complaint is the appropriate remedy.

Daniel Martinez claims that the correct remedy for failure to exhaust tribal court remedies is staying the proceedings, rather than dismissal.  However, the district court, at its discretion, may either dismiss a case or stay the action while a tribal court handles the matter. *Nat'l Farmers*, 471 U.S. at 857, 105 S.Ct. 2447; *Atwood v. Fort Peck Tribal Court*, 513 F.3d 943 at 948.  In *Atwood*, the district court determined that dismissal was appropriate when, as here, the parties' domestic relations issue was still pending before the Tribal Court.  *Id.*  Moreover, the fact that Congress has provided that tribal courts should have the authority to issue and enforce domestic violence protection orders also necessitates dismissal of the instant proceedings.

### III. Conclusion

The Suquamish Tribal Court's jurisdiction over the Martinez domestic relations proceeding is at least colorable and therefore Daniel Martinez has a duty to exhaust his tribal court remedies.  He admits he has not attempted to do so, yet the matters do not meet the requirements of any exception to the exhaustion doctrine.  Based on the foregoing, the defendant, Helen Martinez, respectfully requests that the Court dismiss Daniel Martinez's complaint for declaratory and injunctive relief.

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

1    RESPECTFULLY SUBMITTED this 12th day of December, 2008.

2                                              **NORTHWEST JUSTICE PROJECT**

3
                                              _____s/Jennifer Yogi_____
4                                             Jennifer Yogi, WSBA No. 31928
                                              401 2nd Avenue South, Suite 407
5                                             Seattle, WA 98104
                                              Telephone: (206) 464-1519
6                                             Fax: (206) 464-1533
                                              E-mail: jennifery@nwjustice.org
7

8

9                        **<u>CERTIFICATE OF SERVICE</u>**

10

11   I, Jennifer Yogi, certify under penalty of perjury under the laws of the State of Washington that
     on the 12th day of December, 2008, I caused a copy of this Reply, to be delivered via electronic
     mailing in .pdf format with the Clerk of the Court using the CM/ECF system which will send
12   notification of such filing to the attention of the following:

13   Steven Olsen
     Attorney for Daniel Martinez
14   Olsen and McFadden, Inc. P.S.
     216 Ericksen Avenue
15   Bainbridge Island, WA 98110

16   James Bellis
     Office of Tribal Attorneys
17   Suquamish Tribe
     P.O. Box 498
18   Suquamish, WA  98392-0498

19   Signed at Seattle, Washington, this 12th day of December, 2008.

20

21                              NORTHWEST JUSTICE PROJECT

                                _____/s/ Jennifer Yogi_____
22                              Jennifer Yogi, WSBA #31928
                                Attorney for Defendant Helen Pungowiyi Martinez

23

24

REPLY IN SUPPORT MOTION TO DISMISS
CASE NO. C08-5503 FDB
PAGE 12 OF 12

**Northwest Justice Project**
**401 Second Avenue S, Suite 407**
**Seattle, Washington 98104**
**Phone: (206) 464-1519  Fax: (206) 624-7501**