1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

12

DANIEL MARTINEZ,

13

Plaintiff,

14

v.

15

HELEN MARTINEZ and THE SUQUAMISH
TRIBE,

16

Defendant.

Case No. C08-5503 FDB

ORDER DENYING DEFENDANTS'
MOTIONS TO DISMISS AND GRANTING
PLAINTIFF DECLARATORY AND
INJUNCTIVE RELIEF

17

18

19

20

21

22

23

24

This matter comes before the Court on motions of Defendants Helen Martinez and the

Suquamish Tribe to dismiss Plaintiff's complaint for declaratory and injunctive relief.  The

Defendants assert that because Plaintiff has failed to exhaust tribal court remedies this Court lacks

jurisdiction to determine whether the Suquamish Tribe has jurisdiction to enter an order of protection

against Plaintiff and to act upon a dissolution petition filed by Defendant Helen Martinez.

For the reasons stated below, this Court denies the motion to dismiss and finds that the Suquamish

Tribe lacks jurisdiction to enter protective orders and act upon the dissolution petition regarding

these non-members of the Suquamish Tribe.

25

26

ORDER - 1

**Introduction and Background**

The undisputed material facts are as follows: Daniel and Helen Martinez are married and have two children.  Plaintiff Daniel Martinez is a non-Indian and not a member of the Suquamish Tribe.  Defendant Helen Martinez is an Alaska Native and she and her children are members of the Native Village of Savoonga.  Ms. Martinez and her children are not members of the Suquamish Tribe.  The family resides on fee land owned by a non-Indian located within the Suquamish Reservation.

The parties have appeared before the Suquamish Tribal Court in the past seeking domestic relations protection orders.  In July of 2007, Daniel Martinez petitioned for and obtained a temporary protection order restraining Helen Martinez from her husband and children.  By agreement of the parties this order was dismissed in August of 2007.  Thereafter, Helen Martinez filed a petition for dissolution of marriage with the Tribal Court.  This petition was also dismissed by stipulation of the parties.

On February 28, 2008, Helen Martinez initiated a new action in the Tribal Court seeking a domestic violence order of protection against her husband.  A temporary order was issued on that date prohibiting Mr. Martinez from contacting his wife or children and from going to their home.  Daniel Martinez was served with the temporary protection order and notice of a March 27, 2008 hearing on a permanent order of protection.  Mr. Martinez appeared at the hearing.  The Court entered a final order of protection which Mr. Martinez signed in court.  This order of protection prohibits Mr. Martinez from contacting his wife or children and from going to their home until July 28, 2010.

On March 4, 2008, Ms. Martinez filed for dissolution of marriage and custody of their children in the Tribal Court and moved for temporary orders.  Mr. Martinez responded by filing a proposed parenting plan and a financial declaration.  The Tribal Court entered a temporary order on April 29, 2008.  The Tribal Court set a trial date for dissolution of the marriage for February 27, 2009.

ORDER - 2

1    On May 14, 2008, counsel for Mr. Martinez filed a notice of appearance in both matters

2  asserting lack of subject matter jurisdiction.  The Tribal Court denied counsel's written request for a

3  copy of the record of the domestic violence protective order case on the basis that the case was

4  closed.

5    This complaint for declaratory and injunctive relief followed.

6                              **Subject Matter Jurisdiction**

7    Non-Indians may bring a federal common law cause of action under 28 U.S.C. § 1331 to

8  challenge tribal court jurisdiction.  <u>Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians</u>, 471 U.S.

9  845, 850-53(1985); <u>Boozer v. Wilder</u>, 381 F.3d 931, 934 (9th Cir. 2004).  Federal law defines the

10  outer boundaries of an Indian tribe's power over non-Indians, and the question whether an Indian

11  tribe retains the power to compel a non-Indian to submit to the civil jurisdiction of a tribal court is

12  one that must be answered by reference to federal law and is a federal question under 28 U.S.C. §

13  1331.  <u>Crow Tribe of Indians</u>, at 852; <u>Boozer</u>, at 934. "Whether a tribal court has adjudicative

14  authority over nonmembers is a federal question." <u>Plains Commerce Bank v. Long Family Land &</u>

15  <u>Cattle Co., Inc.</u>, ___U.S. ___, 128 S.Ct. 2709, 2716-17, 171 L.Ed.2d 457 (2008).  Because Daniel

16  Martinez is non-Indian, § 1331 provides subject matter jurisdiction over his federal common law

17  challenge to the tribal court's jurisdiction to enter the protection order and adjudicate his dissolution.

18                              **Exhaustion of Tribal Remedies**

19    Defendants move to dismiss Plaintiff's complaint pursuant to Rule 12(b)(1) and (6)  on the

20  ground Plaintiff did not properly exhaust the requisite tribal court remedies prior to bringing the

21  instant action.

22    Under the doctrine of exhaustion of tribal court remedies, relief may not be sought in federal

23  court until appellate review of a pending matter in a tribal court is complete.  <u>Iowa Mut. Ins. Co. v.</u>

24  <u>LaPlante,</u> 480 U.S. 9, 17 (1987); <u>Atwood v. Fort Peck Tribal Court Assiniboine</u>, 513 F.3d 943, 948

25  (9th Cir. 2008).  The exhaustion rule is prudential, it is required as a matter of comity, not as a

26  ORDER - 3

1 jurisdictional prerequisite.  Strate v. A-1 Contractors, 520 U.S. 438, 451(1997); Atwood, at 948.  As

2 a matter of discretion, a district court may either dismiss a case or stay the action while a tribal court

3 handles the matter. Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845,

4 857(1985); Atwood, at 948.  Ms. Martinez and The Suquamish Tribe assert that because the

5 dissolution is still pending before the Tribal Court, this Court must either dismiss the action or stay

6 the action while the Tribal Court handles the matter and is given the opportunity to determine

7 jurisdiction in the first instance.

8         However, exhaustion is not required where the action is patently violative of express

9 jurisdictional prohibitions or it is otherwise plain that the tribal court lacks jurisdiction over the

10 dispute, such that adherence to the exhaustion requirement would serve no purpose other than delay.

11 Nevada v. Hicks, 533 U.S. 353, 369 (2001);  Strate, 520 U.S. at 459-60 n. 14;  Boozer v. Wilder,

12 381 F.3d 931, 935 (9th Cir. 2004).  Likewise, exhaustion is not required where an assertion of tribal

13 jurisdiction is motivated by a desire to harass or is conducted in bad faith or where exhaustion would

14 be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction.  Crow

15 Tribe of Indians, 471 U.S. at 856 n. 21 (1985); Boozer, at 935.

16         In this case, Plaintiff asserts that tribal jurisdiction is clearly lacking, thus excusing any failure

17 to exhaust his tribal remedies prior to bringing suit in this Court.  Defendants, on the other hand, take

18 exception to Plaintiff's position and argue that this case falls firmly within the authorization of tribal

19 jurisdiction over non-members of a tribe.

**Appropriateness of Tribal Jurisdiction**

21         An analysis of Indian tribal court jurisdiction begins with United States v. Montana, 450 U.S.

22 544 (1981).  In Montana, the Supreme Court held that an Indian tribe could not regulate hunting and

23 fishing by non-Indians on non-Indian owned fee land within the reservation.  The Supreme Court

24 further explained that there are two sources of tribal jurisdiction against nonmembers; either positive

25 by law, by way of statute or treaty, or through the inherent sovereignty of the tribe.  Montana, at

26 ORDER - 4

564.

The Defendants assert that Tribal Court jurisdiction exist by way of a positive grant of

jurisdiction through federal statute and/or through the application of the exceptions for inherent tribal

authority.

**Legislative Grant of Jurisdiction**

Both Defendants the Suquamish Tribe and Helen Martinez assert that there exist a federal

grant of tribal jurisdiction under the Violence Against Women Act (VAWA).  The Defendants

reference the provisions of the VAWA governing enforcement of protection orders.  Under the

VAWA a tribal court protection order is entitled to full faith and credit in state courts "provided the

tribal court has jurisdiction over the parties and matter under the laws of that tribe," and reasonable

notice and opportunity to be heard is given to the person against whom the order is sought sufficient

to protect that person's right to due process.  18 U.S.C. § 2265(b).  The VAWA sets for the grant of

tribal jurisdiction at 18 U.S.C. § 2265(e):

> Tribal court jurisdiction.--For purposes of this section, a tribal court shall have full
> civil jurisdiction to enforce protection orders, including authority to enforce any
> orders through civil contempt proceedings, exclusion of violators from Indian lands,
> and other appropriate mechanisms, in matters arising within the authority of the tribe.

Defendants then point to tribal law providing that any person may petition the tribal court for an

order of protection by filing a petition alleging he or she has been the victim of domestic violence

committed by the respondent.  Suquamish Tribal Code § 7.28.2.

The Court does not construe the provisions of the VAWA as a grant of jurisdiction to the

Suquamish Tribe to enter domestic violence protection orders as between two non-members of the

Tribe that reside on fee land within the reservation.  There is nothing in this language that explicitly

confers upon the Tribe jurisdiction to regulate non-tribal member domestic relations.  The grant of

authority simply provides jurisdiction "in matters arising within the authority of the tribe."

Tribal jurisdiction over non-members is highly disfavored and there exists a presumption

ORDER - 5

1 against tribal jurisdiction.  There must exist "express authorization" by federal statute of tribal

2 jurisdiction over the conduct of non-members.  Bugenig v. Hoopa Valley Tribe, 229 F.3d 1210,

3 1215, 1217 (9th Cir. 2000); Strate v. A-1 Contractors, 520 U.S. 438, 445 (1997).  For there to be an

4 express delegation of jurisdiction over non-members there must be a "clear statement" of express

5 delegation of jurisdiction.  Bugenig, 1218-19.

6      The VAWA provisions provide that tribal protection orders are entitled to full faith and

7 credit only where the tribal court has jurisdiction over the parties and matter under the laws of the

8 tribe.  This provision is simply a recognition of existing trial jurisdiction over the welfare of the Tribe

9 and its members.  It is not clear statement of express grant of expanded jurisdiction over non-

10 members that has not been previously recognized by the courts and Congress.  There is no express

11 congressional authorization to enter protective orders (or entertain dissolution proceedings) against

12 non-tribal members pursuant to the VAWA.  Accordingly, there is no tribal jurisdiction pursuant to

13 legislative grant.

14      **Inherent Tribal Authority**

15      The Defendants next assert that Tribal Court jurisdiction arises form the inherent sovereign

16 powers of the Tribe.  The sovereignty of Indian tribes is of a unique and limited character.  It centers

17 on the land held by the tribe and on tribal members within the reservation.  Plains Commerce Bank v.

18 Long Family Land & Cattle Co., Inc., ___U.S. ___, 128 S.Ct. 2709, 2718, 171 L.Ed.2d 457 (2008).

19 The Supreme Court has stated that "the inherent sovereign powers of an Indian tribe do not extend

20 to the activities of nonmembers of the tribe." Id., at 2718-19; United States v. Montana, 450 U.S.

21 544, 565 (1981).  This general rule restricts tribal authority over nonmember activities taking place

22 on the reservation, and is particularly strong when the nonmember's activity occurs on non-Indian fee

23 land." Plains Commerce Bank, at 2719: Strate v. A-1 Contractors, 520 U.S. 438, 446 (1997).

24      At first blush it would appear that the Tribal Court lacks inherent sovereign powers

25 jurisdiction over the conduct of Plaintiff, as he is a non-member of the Tribe.  In fact, Helen Martinez

26 ORDER - 6

1   is an Alaska Native Indian, and for the purposes of determining the tribal jurisdiction of the

2   Suquamish Tribal Courts, she also is not a member.  See, <u>Smith v. Salish Kootenai College</u>, 434 F.3d

3   1127, 1132-33 (9th Cir. 2006).  Further, the parties reside not on Indian land, but fee property owned

4   by a non-member of the Suquamish Tribe.

5         The principle that the inherent sovereign powers of an Indian tribe do not extend to the

6   activities of nonmembers of the tribe is subject to two exceptions.  The first exception relates to non-

7   members who enter consensual relationships with the tribe or its members; the second concerns

8   activity that directly affects the tribe's political integrity, economic security, health, or welfare."

9   <u>Strate v. A-1 Contractors</u>, 520 U.S. 438, 446 (1997); <u>Smith</u>, 434 F.3d at 1131.  The U.S. Supreme

10  Court first identified these two exceptions in <u>Montana</u>.  The first exception is that a tribe may

11  regulate through taxation, licensing, or other means, "the activities of nonmembers who enter

12  consensual relationships with the tribe or its members, through commercial dealing, contracts, leases

13  or other arrangements."  <u>Montana</u>, 450 U.S., at 565.  The second exception is that a tribe "may also

14  retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within

15  its reservation when that conduct threatens or has some direct effect on the political integrity, the

16  economic security, or the health or welfare of the tribe."  <u>Id</u>. at 566.

17        These exceptions are limited, and cannot be construed in a manner that would swallow the

18  rule, or severely shrink it.  <u>Plains Commerce Bank</u>, at 128 S.Ct. 2720.  Efforts by a tribe to regulate

19  non-members, especially on non-Indian fee land, are presumptively invalid.  The burden rests on the

20  tribe to establish that one of the two <u>Montana</u> exceptions is satisfied.  <u>Id</u>.; <u>Atkinson Trading Co. v.</u>

21  <u>Shirley</u>, 532 U.S. 645, 654, 659 (2001).

22                 **Consensual Relationship Exception**

23        The Tribe and Ms. Martinez assert that Mr. Martinez has entered into a consensual

24  relationship with the Suquamish Tribe by having availed himself of the Tribal Courts in prior actions

25  concerning his relationship with his wife, Helen Martinez.

26  ORDER - 7

1      The Court finds this argument unpersuasive.  Mr. Martinez is not engaged in any of the

2 illustrative "consensual relationships" described in Montana: "commercial dealing, contracts, leases,

3 or other arrangements."  See United States v. Montana, 450 U.S. 544, 565 (1981).  The analysis of

4 Montana, and subsequent cases, expressly or implicitly recognize tribes limited authority over activity

5 occurring within the reservation and tribes lack of authority to determine external relations.  Montana,

6 at 564.  As Montana emphasizes, "exercise of tribal power beyond what is necessary to protect tribal

7 self-government or to control internal relations is inconsistent with the dependent status of the tribes,

8 and so cannot survive without express Congressional delegation."  Id.  The unifying principle behind

9 both of the Montana exceptions is that, absent express congressional delegation, a tribe has civil

10 authority over non-Indians only where such authority is "necessary to protect tribal self-government

11 or to control internal relations."  Id. at 564.  Although Montana specifically addressed the regulatory

12 rather than the adjudicatory jurisdiction of tribes, there is nevertheless a presumption that if a tribe has

13 authority under Montana to regulate the activities of a non-member, jurisdiction over disputes arising

14 out of those activities exists in the tribal courts.  Strate, 520 U.S. at 453. Absent regulatory authority,

15 there is no adjudicatory jurisdiction.  The exercise of tribal power beyond what is necessary to protect

16 tribal self-government or to control internal relations within the Tribe is inconsistent with the

17 dependent status of the tribes, and so cannot survive without express congressional delegation.  South

18 Dakota v. Bourland, 508 U.S. 679, 694-95 (1993).  "As to nonmembers ... a tribe's adjudicative

19 jurisdiction does not exceed its legislative jurisdiction...."  Strate v. A-1 Contractors, 520 U.S. 438,

20 453 (1997); Nevada v. Hicks, 533 U.S. 353, 357-58 (2001).

21      Consensual relation cases that have been recognized by the courts involve either direct

22 regulation by a tribe of non-Indian activity on the reservation or lawsuits between a private party and

23 the tribe or tribal members arising from an on-reservation transaction or agreement.  See  Smith v.

24 Salish Kootenai College, 434 F.3d 1127 (9th Cir. 2006)(non-member plaintiff brought suit in tribal

25 court against tribal entity); Williams v. Lee, 358 U.S. 217 (1959)(non-member plaintiff brought action

26  ORDER - 8

1  in tribal court against tribal member).  Here, as in <u>Strate</u>, there is no consensual relationship and thus,

2  no tribal jurisdiction where the dispute is distinctly non-tribal in nature and arises between two non-

3  Indians on fee land within the reservation.  See <u>Strate</u>, 520 U.S., at 457.

4      As recently recognized in <u>Plains Commerce Bank</u>, the first exception is confined to regulation

5  of non-Indian activities on the reservation that have a discernable effect on the tribe or its members.

6  <u>Plains Commerce Bank, v. Long Family Land and Cattle Co.</u>, ___ U.S. ___, 128 S.Ct. 2709, 2721,

7  171 L.Ed.2d 457 (2008).  "The logic of <u>Montana</u> is that certain activities on non-Indian fee land (say,

8  a business enterprise employing tribal members) or certain uses (say, commercial development) may

9  intrude on the internal relations of the tribe or threaten tribal self-rule. To the extent they do, such

10  activities or land uses may be regulated." <u>Id</u>., at 2723.  Where there exist no basis for tribal

11  governance of non-members' conduct on fee land, it is equally evident that the tribal courts lack

12  adjudicatory authority over disputes arising from such conduct.  <u>Hornell Brewing Co. v. Rosebud</u>

13  <u>Sioux Tribal Court</u>, 133 F.3d 1087, 1092 (8th Cir. 1998).

14      Neither Mr. Martinez or his wife, Helen Martinez, are members of the Suquamish Tribe and

15  their domicile is on fee land.  Their domestic disputes and dissolution proceeding are distinctly non-

16  tribal in nature and cannot be considered to have intruded on the internal relations of the Tribe or

17  threatened tribal self-rule.

18      There is no debatable question or colorable claim as to the application of the first exception.

19  The fact that the Tribal Court accepted jurisdiction over the conduct of these parties in the past does

20  not infer Plaintiff's consent to present jurisdiction.  It does, however, evidence a tribal court disregard

21  for the limits of its jurisdiction.  The Suquamish Tribal Court lacks jurisdiction under the first

22  exception to entertain a dissolution proceeding or to enter protective orders as to these non-Tribal

23  member parties to this litigation.

24      **Political Integrity, Economic Security, and Health or Welfare Exception**

25      The second exception authorizes the tribe to exercise civil jurisdiction when non-Indians'

26  ORDER - 9

1   conduct menaces the political integrity, the economic security, or the health or welfare of the tribe.

2   Plains Commerce Bank, 128 S.Ct., at 2726;  Montana, 450 U.S., at 566.  This exception stems from

3   the same sovereign interests that give rise to the first.  Plains Commerce Bank, at 2726.  The conduct

4   must do more than injure the tribe, it must imperil the subsistence of the tribal community.  Id.

5          It is a fundamental fact in this litigation that neither party is a member of the Suquamish Tribe.

6   The dissolution proceeding and domestic relations between these parties does not fall within the rubic

7   of directly affecting the health and welfare of the Tribe.  The domestic relations of non-tribal parties

8   does not "imperil the subsistence of the tribal community."  The second exception is inapplicable.

9   The Suquamish Tribal Court lacks jurisdiction to enter protective orders or entertain a dissolution

10  proceeding as to these two non-members of the Tribe.

11                                              **Conclusion**

12         For the above stated reasons the Court finds that Plaintiff need not exhaust tribal remedies

13  before challenging tribal jurisdiction in this Court.  Jurisdiction is neither colorable or plausible.

14  Jurisdiction over non-members of the Tribe domiciled on fee land is plainly lacking and exhaustion

15  would only serve to delay the proceedings.  Lacking jurisdiction, the underlying orders entered by the

16  Tribal Court are necessarily null and void.  The parties may petition the appropriate state court to

17  resolve their disputes.

18         ACCORDINGLY;

19         IT IS ORDERED:

20         (1)     Motion to Dismiss by Defendant Suquamish Tribe [Dkt. # 8] is **DENIED**.

21         (2)     Motion to Dismiss by Defendant Helen Martinez [Dkt. #9] is **DENIED**.

22         (3)     Plaintiff Daniel Martinez is **GRANTED** declaratory and injunctive relief.  The

23                 Suquamish Tribe does not have civil jurisdiction to adjudicate domestic relation

24                 disputes between the non-members of the Tribe,  Daniel and Helen Martinez.  This

25                 lack of jurisdiction includes petitions for dissolution, child custody, and domestic

26  ORDER - 10

violence protection orders.  Orders entered by the Suquamish Tribal Court relating to the domestic relations of Daniel Martinez and Helen Martinez are null and void.  The Suquamish Tribal Court is enjoined from issuing or enforcing any said orders.


DATED this15th day of December, 2008


FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 11